## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* FINK.

ERROR TO THE COURT OF APPEALS OF MONTGOMERY COUNTY, STATE OF OHIO.

No. 2. . Argued October 7, 1919.—Decided November 10, 1919.

Under the Act to Regulate Commerce, it is unlawful for a carrier to accept less than the tariff rate as compensation for the interstate transportation of goods. P. 581.

A consignee accepting delivery of the goods must be presumed to have understood this. *Id.*

The carrier has a lien for the lawful charges until they are tendered or paid, and a consignee who obtains the goods at destination upon

payment of less, due to a misunderstanding by himself and the carrier of the rate lawfully applicable, must be deemed to have assumed the obligation of paying the full lawful rate, and is liable to the carrier accordingly.  P. 582.

An agreement with the consignor that title to the goods shall not pass to the consignee until delivery can not alter the situation.  *Id.*

Nor can the hardship to the consignee, resulting from his misunderstanding and subsequent change of situation in reliance on it; since the requirements of the statute can not be avoided by estoppel. *Id.*

19 Ohio C. C. (n. s.) 103, reversed.

THE case is stated in the opinion.

*Mr. William M. Matthews,* with whom *Mr. Edwin P. Matthews* was on the brief, for plaintiff in error.

*Mr. Roy G. Fitzgerald,* with whom *Mr. Thos. H. Ford, Mr. Wayne F. Lee* and *Mr. Wm. F. Hyers* were on the brief, for defendant in error:

Fink neither expressly nor impliedly agreed to pay any freight.  The railroad company made it a condition that he pay the bill before he could examine the goods offered him by the shipper; and *Union Pacific R. R. Co.* v. *American Smelting & Refg. Co.,* 202 Fed. Rep. 720, is therefore not applicable.  Plaintiff in error's other cases are based upon bills of lading stipulating that the "consignee is to pay the freight."

As between Fink and the railroad company, the principle of estoppel still applies as stated in Hutchinson on Carriers, 3d ed., § 807, and *Central Railroad of New Jersey* v. *MacCartney,* 68 N. J. L. 165; for, while the amount of the freight rate is not the subject of private contract, the law must not be used as an instrument of injustice and oppression, and that without any justification based upon the requirement of the Interstate Commerce Act to collect the lawful freight, since the consignor is primarily liable and, even if the charges were to be collected from the con-

signee, the liability of the consignor is not discharged. *British & F. M. Ins. Co.* v. *Portland F. M. Co.,* 124 Fed. Rep. 855; 130 Fed. Rep. 860; *Finn* v. *Railroad Co.,* 112 Massachusetts, 524; Hutchinson on Carriers, § 810; *Atlas S. S. Co.* v. *Colombian Land Co.,* 102 Fed. Rep. 358; *Great Western Ry. Co.* v. *Bagge & Co.,* 15 Q. B. Div. 626; *Baltimore & Ohio S. W. Ry. Co.* v. *New Albany Box Co.,* 48 Ind. App. 647; *Keeling* v. *Connally & Co.,* 157 S. W. Rep. 232; *Chicago &c. Ry. Co.* v. *Floyd,* 161 S. W. Rep. 954.

The Interstate Commerce Act simply enjoins upon a carrier the duty of collecting the proper freight charges from the party who is legally liable at common law to pay, and does not create any new liability or impose any additional burden upon consignor or consignee. [Quoting from § 6 of Interstate Commerce Act of 1887, and amendments; Rule No. 314, Collection of Undercharges, Conference Rulings of the Interstate Commerce Commission.]

At common law there is a presumption of fact that the consignee is the owner of goods shipped and hence liable for freight. 4 Elliott on Railroads, § 1559. But this presumption may be rebutted by proof of the facts, as in this case. *Blanchard* v. *Page,* 8 Gray, 281; *Sanders* v. *Van Zeller,* 4 Ad. & El. N. S. 260; Van Zile on Bailments and Carriers, § 702; *Lawrence* v. *Minturn,* 17 How. 100.

Fink's position in this case is sustained by well considered opinions in the States of Alabama and New York. *Central of Georgia Ry. Co.* v. *Southern Ferro C. Co.,* 193 Alabama, 108; *Pennsylvania R. R. Co.* v. *Titus,* 156 App. Div. 830. See also, *Frontier S. S. Co.* v. *Central Coal Co.,* 234 Fed. Rep. 30.

MR. JUSTICE DAY delivered the opinion of the court.

An action was brought by the Railway Company before a Justice of the Peace in Montgomery County, Ohio, to

recover fifteen dollars, the freight charges upon a shipment in interstate commerce from Los Angeles, California, to Dayton, Ohio. The defendant, Fink, prevailed in the Magistrate's court, the judgment was reversed in the Court of Common Pleas, the case was taken to the Court of Appeals of Montgomery County where the judgment of the Court of Common Pleas was reversed and that of the Magistrate affirmed. 19 Ohio Circuit Court, New Series, 103. The Supreme Court of Ohio denied a motion to require the record to be certified to it by the Court of Appeals, and the case is here upon writ of error to the Court of Appeals of Montgomery County, Ohio.

The facts are that the railroad company on September 13, 1910, delivered to Fink, the consignee, two boxes of Indian relics shipped to him at Dayton, Ohio, from Los Angeles, California, the waybill specifying charges in the sum of fifteen dollars, which sum Fink paid upon receipt of the goods. The tariff rates filed with the Interstate Commerce Commission so classified this merchandise that the transportation charges should have been thirty dollars instead of fifteen. It is for the difference that this action is prosecuted.

It appears that Fink had dealt with the consignor at Los Angeles in suchwise that some old coins, belonging to Fink, were to be traded for a collection of Indian relics. Fink shipped the coins to the postmaster at Los Angeles to be held for his protection. At the time the action was brought, about one year after the shipment, the postmaster had released the coins, and Fink had sold some of the relics. Fink testified that he had no knowledge of the freight classification and rates, and simply paid the freight bill as it was presented to him. No agreement appears to have been made with the consignor that Fink should pay the freight charges.

Examination shows some conflict of authority as to the liability at common law of the consignee to pay freight

charges under the circumstances here shown. The weight of authority seems to be that the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier. (See the cases collected and discussed in 4 Elliott on Railroads, § 1559.) However this may be, in our view the question must be decided upon consideration of the applicable provisions of the statutes of the United States regulating interstate commerce. The purpose of the Act to Regulate Interstate Commerce, frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce the rate duly filed with the Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure.

Section 6 of the Act to Regulate Commerce, which was in force at the time of this shipment, provides: "Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except as are specified in such tariffs." It was, therefore, unlawful for the carrier upon delivering the merchandise consigned to Fink to depart from the tariff rates filed. The statute made it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates duly filed. Fink, as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff. When the carrier turned over

the goods to Fink upon a mistaken understanding of the rate legally chargeable, both it and the consignee undoubtedly acted upon the belief that the charges collected were those authorized by law. Under such circumstances consistently with the provisions of the Interstate Commerce Act the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified as required by the statute. For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate. *Texas & Pacific Ry. Co.* v. *Mugg*, 202 U. S. 242. The transaction, in the light of the act, amounted to an assumption on the part of Fink to pay the only legal rate the carrier had the right to charge or the consignee the right to pay. This may be in the present as well as some other cases a hardship upon the consignee due to the fact that he paid all that was demanded when the freight was delivered; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation. *Louisville & Nashville R. R. Co.* v. *Maxwell*, 237 U. S. 94. In that case the rule herein stated was enforced as against a passenger who had purchased a ticket from an agent of the company at less than the published rate. The opinion in that case reviewed the previous decisions of this court, from which we find no occasion to depart.

It is alleged that a different rule should be applied in this case because Fink by virtue of his agreement with the consignor did not become the owner of the goods until after the same had been delivered to him. There is no proof that such agreement was known to the carrier, nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods. *Pennsylvania R. R. Co.* v. *Titus*, 216 N. Y. 17. Nor can the defendant in error successfully invoke the principle of estop-

pel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. *New York, New Haven & Hartford R. R. Co.* v. *York & Whitney Co.*, 215 Massachusetts, 36, 40.

In our view the Court of Common Pleas correctly held Fink liable for the payment of the remaining part of the legal rate upon the merchandise received by him. The judgment of the Court of Appeals of Montgomery County, Ohio, is reversed, and the cause remanded to that court for further procedings not inconsistent with this opinion.

*Reversed.*