WESTERN & ATLANTIC R. CO. et al. v. UNDERWOOD.

(District Court, N. D. Georgia. July 13, 1922.)

No. 520.

Carriers ⬥194—Consignee accepting interstate shipment is liable for freight charges.

A consignee cannot accept delivery of an interstate shipment of goods without incurring liability for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the consignee's actual relation to the shipper is.

At Law. Action by the Western & Atlantic Railroad Company and others against J. R. Underwood. Trial to court. Judgment for plaintiffs.

Tye, Peeples & Tye, of Atlanta, Ga., for plaintiffs.

A. W. Long, of Atlanta, Ga., and Campbell Wallace, of Marietta, Ga., for defendant.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SIBLEY, District Judge. This case was submitted by stipulation of the parties to the court without a jury. I find the facts to be as follows:

Goods owned by the Merriman Potash Products Company were shipped by it, in interstate commerce, to "J. R. Underwood, Agent," on a straight bill of lading reciting that the freight had been prepaid. As between the company and Underwood, he was not liable to pay the freight, but was to receive and sell the goods as the shipper's agent, and account for the proceeds. On arrival it was discovered that the full lawful freight charges had not been paid, and a small additional amount was demanded of Underwood. He stated that the goods belonged to the shipper, and that he did not owe the freight, but to avoid delay and confusion would pay the sum demanded, if it was all, and did pay it on that understanding. Some months later it was discovered that $93 additional was due according to the lawful tariffs applicable, which sum was demanded of him, and on refusal to pay this suit was brought.

The contention of law is that the primary liability for freight is on the shipper, and that while the consignee, by accepting the goods, becomes a party to the contract of shipment, and if it recites that the consignee is to pay the freight, or makes no recital, the consignee is to be treated as assuming the charges, since the carrier's lien is relinquished to him, yet it is otherwise if the contract of shipment is that the freight is to be prepaid, the carrier then expressly agreeing to look to the shipper and not the consignee, and that especially is this true when the consignee, to the knowledge of the carrier, is the shipper's agent and does not own the property on which the lien is released by delivery. The argument is forceful, if the carrier can be treated as a mere private contractor.

The reasoning of most of the cases asserting the consignee's general liability is based, on the consignee's benefit as owner by the delivery of the property; or on the actual inference of mutual intent, where the recitals of the contract or the absence of them consists with a liability assumed by the consignee. See, as typical, Union Pacific Co. v. American Smelting Co., 202 Fed. 720, 121 C. C. A. 182, and cases there cited. Exception from the rule of f. o. b. shipments and those delivered to one known to be shipper's agent merely has been recognized in cases cited in note to Pennsylvania Railroad v. Titus (216 N. Y. 17, 109 N. E. 857, L. R. A. 1916E, 1127) in Ann. Cas. 1917C, at page 862. See, also, Central of Ga. Railroad v. Southern Ferro Concrete Co., 193 Ala. 108, 68 South. 981, Ann. Cas. 1916E, 376. But interstate carriers are now, by familiar provisions of the Interstate Commerce Act (Comp. St. § 8563 et seq.), required under penalty to collect the established charges. No federal statute has been found expressly declaring who shall pay them, but in Bills of Lading Act, § 25 (39 Stat. 538, Comp. St. § 8604m), the carrier's lien is recognized and defined and made to cover freight charges among other things. Section 8 (Comp. St. § 8604dd) requires delivery to consignee, or holder of an order bill, only upon an "offer in good faith to satisfy the carrier's lawful lien upon the goods." This fairly implies a duty placed,

on the consignee to satisfy the lien if he takes the goods. No mistake as to the amount of the freight can be asserted, and no misrepresentations about that can deceive, for the consignee is bound to know what it is. He cannot rely on a statement that it has been prepaid, because the statute requires him "to satisfy the lawful lien" before taking the goods, and not simply to pay what is demanded of him. This must be the meaning of the language used by the Supreme Court:

"The Interstate Commerce Act requires the carrier to collect and the consignee to pay all lawful charges * * * prescribed by the tariff in respect of every shipment. Their duty and obligation grow out of and depend upon that act." Louisville & N. R. R. Co. v. Rice, 247 U. S. 202, 38 Sup. Ct. 429, 62 L. Ed. 1071.

"Under such circumstances, consistently with the provisions of the Interstate Commerce Act, the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified as required by the statute. For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate." Pittsburgh Railroad v. Fink, 250 U. S. 577, 582, 40 Sup. Ct. 27, 28 (63 L. Ed. 1151).

In a case where the consignee, as here, was a mere selling agent, and had settled with his principal, and was ignorant of the terms of the bill of lading, it was said that:

"The doctrine announced in Pittsburgh Railroad Co. v. Fink, 250 U. S. 577, * * * is controlling, and the liability of York & Whitney Company was a question of law. The transaction between the parties amounting to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge, the consignee could not escape the liability imposed by law through any contract with the carrier."

See New York Central Railroad v. York & Whitney Co., 256 U. S. 406, 41 Sup. Ct. 509, 65 L. Ed. 1016.

None of these cases involve a prepaid shipment, but they treat the consignee's liability as not resting upon any implied contract or intent to pay, but as arising on the facts from the law. The same conclusion was reached as to prepaid shipments in the recent cases of Waters v. Pfister & Vogel (Wis.) 186 N. W. 173, and Great Northern Railroad v. Hyder (D. C.) 279 Fed. 783. That the consignee cannot accept delivery without incurring liability for the carrier's charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the consignee's actual relation to the shipper is, appears a harsh rule, but is seemingly established by authority. If by the shipper's omission the consignee is thus made liable for a charge which as between him and the shipper should not be borne by him, his recourse is on the shipper. The carrier is not bound by their private rights in the transaction, whether known or unknown to it, nor by any mistake or misrepresentation occurring, but under the law may look to the shipper as the original contractor to pay and to the person who as consignee accepts the goods and becomes by statute liable to discharge the lien thereon until the lawful charges are satisfied.

Judgment is therefore entered for the plaintiff against the defendant for $93 principal, with interest at 7 per cent. from March 1, 1920, $2.79 as war tax, and costs.