## LOUISVILLE & N. R. CO. v. CENTRAL IRON & COAL CO.

(Circuit Court of Appeals, Fifth Circuit. October 27, 1922.)

No. 3859.

1. **Carriers ⬦194—Consignor held not liable for freight because of erroneous undercharge to consignee.**

    Where the consignee of a shipment of coke purchased f. o. b. at point of shipment and contracted to pay the freight, and the carrier delivered and collected from it the freight then considered due, though by error an undercharge, it elected to look to the consignee and cannot collect the deficiency from the consignor.

2. **Appeal and error ⬦987(3)—Verdict directed on motions by both parties not reviewable, if supported by any evidence.**

    Where both parties request a directed verdict, the verdict directed will not be disturbed, if supported by any evidence.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by the Louisville & Nashville Railroad Company against the Central Iron & Coal Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Homer W. Davis, of Chicago, Ill., and J. M. Foster, of Tuscaloosa, Ala. (Foster, Verner & Rice, of Tuscaloosa, Ala., Gardiner Lathrop, of Chicago, Ill., and Paul Burks, of Los Angeles, Cal., on the brief), for plaintiff in error.

Henry A. Jones, of Tuscaloosa, Ala. (Jones, Jones & Van De Graaff, on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. [1] Louisville & Nashville Railroad Company (styled herein railroad) on January 8, 1920, brought a suit in the United States District Court for the Northern District of Alabama against Central Iron & Coal Company (styled herein consignor) to recover the sum of $3,463.46, with interest, as an undercharge on 10

carloads of coke shipped from Holt, Ala., to Mayer, Ariz., consigned to the order of Tutwiler & Brooks, notify Great Western Smelters Corporation (styled herein corporation) at Mayer, Ariz. Said shipment was routed over the lines of the plaintiff railroad to New Orleans, thence by the Southern Pacific Line to El Paso, Tex., and thence by the Santa Fé Lines to Mayer, Ariz. The legal freight charge for such shipment was $8,545.61. By mistake only $5,082.15 was collected at destination from said corporation. This suit is for the difference between said sums.

Consignor pleaded that it had sold before shipment the coke to Tutwiler & Brooks f. o. b. cars at Holt, Ala.; that Tutwiler & Brooks in turn had sold the coke to said corporation, under a contract providing that it should pay the freight; that pursuant to instructions of Tutwiler & Brooks on January 7, 1917, said railroad received said coke for transportation, and the consignor billed the coke to the order of Tutwiler & Brooks notify said corporation at Mayer, Ariz.; that said coke, on delivery to said railroad, became the property of said Tutwiler & Brooks; that the bills of lading were delivered at once by the consignor to Tutwiler & Brooks, who indorsed the same and drew on said corporation with bills of lading attached for the price it was to pay for said coke, which it had purchased f. o. b. cars at Holt, Ala.; said draft and bills of lading were forwarded by Tutwiler & Brooks to a bank at Mayer which collected said draft and turned over the bills of lading to said corporation; that the delivering carrier thereupon collected from said corporation $5,083.15 as the freight on said shipment, and delivered to it said shipment; that at the time said coke was delivered to said corporation the delivering line had in its possession either a sum of money or a bond to secure the payment of any freight charges due on goods consigned to said corporation, and delivered to said corporation without payment of freight or carrying charges, and it could have collected said alleged undercharge from said corporation at any time up to the time of institution of this suit.

There was evidence introduced sufficient to sustain said plea. In addition, said bills of lading which were introduced provided that every service to be performed thereunder should be subject to all the conditions thereof, including those on the back thereof. There was testimony that until April 15, 1920, said corporation was able and could have been compelled to pay said undercharge. The corporation, at the time judgment was rendered, was insolvent. The plaintiff and defendant each requested the court to direct a verdict in its favor. The court directed a verdict in favor of the defendant.

The controlling question in the case is: Was the consignor liable for the undercharge? In this case the bills of lading were in such form as warranted the court in holding that they indicated that Tutwiler & Brooks were the owners of the goods being shipped. The shipments were "to the order of Tutwiler & Brooks, notify Great Western Smelters Corporation." The bills of lading, indorsed by Tutwiler & Brooks, were presented by said corporation, who paid the freight charges then demanded, and received the goods as consignee. The goods were shipped without prepayment of freight. The bills of lading provided that:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery."

The carrier surrendered the goods to the consignee, surrendering its lien thereon. "The weight of authority seems to be that the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the carrier." Pittsburgh, etc., R. Co. v. Fink, 250 U. S. 577, 581, 40 Sup. Ct. 27 (63 L. Ed. 1151).

In the case above cited, it appeared that the carrier delivered the goods to the consignee and collected what each believed to be the correct freight charge. Discovering that such sum was an undercharge, the carrier demanded of the consignee the additional amount of the legal charge. No agreement had been made with the consignee that he should pay the freight. The court, after stating that the weight of authority was that the consignee was prima facie liable for the freight charges when he accepts the goods from the carrier, said that, however that may be, under the statutes regulating interstate commerce, the rule was:

"Under such circumstances, consistently with the provisions of the Interstate Commerce Act, the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified as required by the statute. For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate. Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242. The transaction, in the light of the act, amounted to an assumption on the part of Fink to pay the only legal rate the carrier had the right to charge or the consignee the right to pay. This may be in the present as some other cases a hardship upon the consignee due to the fact that he paid all that was demanded when the freight was delivered; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation." 250 U. S. 582, 40 Sup. Ct. 28, 63 L. Ed. 1151.

Here there is proof that the consignee, the corporation, was bound by its contract of purchase to pay the freight charges. It purchased the goods f. o. b. cars at the initial point of shipment. The carrier dealt with it as the party liable for the freight, and collected what it erroneously thought to be the full freight charges and delivered the goods.

The facts clearly established that the corporation was the party liable for the carrier's charge. In this case the facts clearly show that the Central Iron & Coal Company had parted with all interest in the goods by sale to Tutwiler & Brooks. It was neither the owner nor the consignee. The bills of lading were to the order of Tutwiler & Brooks. The bills of lading had been indorsed and delivered to the Smelters Corporation. It had demanded the goods and paid the freight then required. By receiving the goods the Smelters Corporation became liable for this undercharge. Had it been only the agent of the consignor, the law would have cast this liability on it. No contract with the carrier could have relieved it. As the Supreme Court has said in a recent case:

"We think the doctrine announced in Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, 250 U. S. 577 (November 10, 1919), is controlling, and that the liability of York & Whitney Company was a question of law. The

transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier." New York Central, etc., Railroad Co. v. York & Whitney Co., 256 U. S. 406, 408, 41 Sup. Ct. 509, 510 (65 L. Ed. 1016).

See, also, Western & Atlantic R. Co. v. Underwood (D. C.) 281 Fed. 891.

For nearly three years the matter rested in this condition. No sufficient reason for a failure to ascertain the facts and to proceed against the consignee is shown. The evidence authorized a finding that the consignee remained solvent until after the present suit was filed.

Where, under circumstances such as those of this case, the carrier delivers to the consignee and collects the freight then considered due, though by error an undercharge, such conduct on the part of the carrier will be an election to collect from the consignee, and it will not be permitted to sue the consignor for the balance. Yazoo & M. V. R. Co. v. Zemurray, 238 Fed. 789, 151 C. C. A. 639.

[2] Both parties having requested the court to direct a verdict, the action of the court will not be disturbed, if there was any evidence to support the verdict directed. Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654.

We think the District Judge was warranted in directing a verdict for the defendant and the judgment of the District Court is affirmed.