'Vaughan having consented to a remittitur of
$900, the judgment of the Court of Common Pleas
is affirmed.

*Judgment affirmed.*

BUCHWALTER and HAMILTON, JJ., concur.

Judges of the First Appellate District, sitting in
place of Judges VICKERY, SULLIVAN and LEVINE, of
the Eighth Appellate District.

---

THE A. M. LEWIN LUMBER CO. *v.* THE LOUISVILLE
& NASHVILLE RY. CO.

*Railroads—Freight charges—Consignee's liability limited to law-
ful rate—Evidence—Agreement by consignee's agent to pay
demurrage, inadmissible—Carrier can not collect demurrage
accruing at intermediate points, when.*

1. An agreement by which a consignee of freight is to pay a
   common carrier more than the lawful rate does not render
   such consignee liable for any amount in excess of the legal
   rate.
2. In an action by a common carrier against a consignee of
   goods to recover demurrage charges, it is error for the trial
   court to admit testimony as to the agreement on the part
   of an employe of the consignee to pay demurrage charges
   claimed prior to the time the car was delivered to the
   consignee.
3. Where a shipment of freight is billed through from point of
   origin to destination, and the common carrier has agreed

[1] Carriers, 10 C. J. § 695 (Anno.); [2] Id., 10 C. J. § 745
(Anno.); [3] Id., 10 C. J. § 738 (Anno.).

to make delivery at the point named in the bill of lading, the carrier can not collect demurrage charges at a point intermediate to the designated point of delivery.

(Decided April 9, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Leonard H. Freiberg,* for plaintiff in error.
*Mr. H. K. Rogers,* for defendant in error.

BUCHWALTER, J. This cause was originally brought in the Municipal Court by the L. & N. Railway Company to recover demurrage charges, penalties and war tax on a shipment of lumber from Thrift, Georgia. The case was submitted to the court, a jury having been waived, and judgment was rendered in favor of the railroad company.

The original judgment was without interest. The Court of Common Pleas modified that judgment, so as to include interest, and affirmed the judgment as modified.

The A. M. Lewin Lumber Company, defendant in the Municipal Court, now prosecutes error to reverse the judgments of the Municipal and Common Pleas courts.

It appears from the evidence that the plaintiff in error bought a car of lumber from C. B. Mack, doing business as the Highland Lumber Corporation, at Chattanooga, Tennessee. The lumber was shipped by J. M. Oglesby & Sons, from a mill at Thrift, Georgia, on April 1, 1920. The bill of lading, a copy of which is in the record, gave the number of the car as 32,371, although the writing

in the copy sent to the plaintiff in error was rather indistinct. In the bill of lading, the consignee was named as Highland Lumber Corporation, Cincinnati, Ohio, and the car was routed over the Georgia & Florida railway to its junction with the Southern railroad, and from that point to Cincinnati. While the car was in transit, the Highland Lumber Corporation wrote from Chattanooga, Tennessee, under date of April 8, 1920, to the agent of the Southern railroad to deliver car "32381," C. M. & St. P., shipped April 1, Thrift, Georgia, consigned care Southern Line, to the L. & N. on arrival. All charges to follow.

On April 10, 1920, the Lewin Lumber Company sent the following letter to the agent of the L. & N. Railway:

"We have the following cars consigned to us which we wish upon arrival delivered to our Bank Street switch, via Q. & C. * * * Car C. M. St. P. 32381, shipped by C. B. Mack, Chattanooga, Tenn., under date of April 8th."

The car arrived over the L. & N. at Latonia, Kentucky, on April 17. The railroad company immediately sent a postal to the Highland Lumber Corporation, Cincinnati, Ohio, notifying it of the arrival of car C. M. & St. P. 32371, from Thrift, Georgia. This notice was returned to the sender, as being unclaimed.

The railroad company on the same day wired the freight agent of the Georgia & Florida railroad at Thrift, Georgia, that the consignee was unknown, that the freight was unclaimed, giving the car number, date of waybill and consignee's name,

and asked him to advise disposition of the car. To this there was no answer.

On April 21, the L. & N. agent again wired the agent of the Georgia & Florida railroad at Thrift, Georgia, to which no answer was returned.

On April 24, he wired J. M. Oglesby & Sons, at Thrift, Ga., giving the proper car number. To which no reply was received.

On April 27, the agent of the L. & N. received a wire from W. O. Wall, from Augusta, Ga., answering the wire, and stating that the car was consigned to the Highland Lumber Corporation, Cincinnati. The same day, the L. & N. agent wired Mr. Wall, stating that the car was unclaimed and asking for full address of the consignee.

On April 29 a telegram from The Highland Lumber Corporation, Chattanooga, to the L. & N. agent stated, "car 32381 Milwaukee deliver to A. M. Lewin Lumber Co., Cincinnati. All charges follow."

It was then discovered that car 32371 was the car in question. The Lewin company was notified and the car was delivered to it on the 30th.

The testimony shows that after the car arrived at Latonia the agent for the Railroad company had telephoned to the Lewin company, and asked for the address of the Highland Lumber Corporation, as it was holding a car consigned to that corporation, which address was furnished by the bookkeeper of the Lewin company.

It appears further that when notice is received by the railroad from consignees as to the disposition of cars, this notice is indexed on what is called the "reconsignment board." On these boards, the

cars are indexed by the last two digits of their number, there being a page for each ten. The notice received from the Lewin Lumber Company therefore was posted on the board containing cars whose last two numbers were in the eighties, and on the arrival of a car the last two numbers of which were 71 inquiry would be directed only to the index page containing car numbers ending in the seventies.

It is contended by the plaintiff in error:

First: That the delay was due to the fault of the railroad.

Second: That evidence as to an agreement to pay the charges in question was erroneously admitted.

Third: That Latonia was not the delivery point named, and hence demurrage could not properly be charged until the car had been placed on the track at destination.

As to the claim that the delay was due to the fault of the railroad company, plaintiff in error relies on the notice sent by it to the railroad company on April 10, which is quoted above. This notice advises the railroad company that the car was consigned to the Lewin Lumber Company, while the bill of lading shows the consignee to be the Highland Lumber Corporation. The number of the car given in the notice is 32381. The correct number of the car was 32371. The notice further states that the shipment was made by C. B. Mack, Chattanooga, Tennessee, on April 8, while the bill of lading shows the shipment came from J. M. Oglesby & Sons, Thrift, Georgia, on April 1. This notice, erroneous in practically every fact

stated, could not be construed as sufficient to advise the railroad that car No. 32371 was the car intended for the Lewin Company. Furthermore, the railroad company on the arrival of the car in question sent a notice to the consignee named and to the address stated in the bill of lading. As shown by the record the railroad exhibited due diligence in its efforts to locate the consignee.

It is claimed that the car was to be routed over the Southern, and that by sending it over the Louisville & Nashville the carrier failed to obey instructions.

The Highland Lumber Corporation had advised the Southern Railroad's agent, by letter of April 8, to deliver the car to the Louisville & Nashville, and in its letter of advice it used the number 32381, as did the Lewin Company in its instruction to the Southern as to delivery.

The bill of lading stated "destination or junction on G. & F. Ry., care Southern Railway."

In view of the letter of the Highland Lumber Corporation, ordering the delivery of the car to the L. & N., which letter was in the possession of the Lewin Company, it does not appear that the routing over the L. & N. was responsible for the delay and error.

It is also claimed that testimony was erroneously admitted as to an agreement on the part of an employe of the Lewin company to pay the demurrage charges claimed prior to the time that the car was delivered to said company. This was error. A consignee obtaining a car assumes to pay the lawful rate which the carrier may charge. A payment of less than a lawful rate, due to error

by the carrier, does not relieve the consignee of the liability to pay the balance; nor does an agreement by the consignee to pay more than the legal rate render him liable for any amount in excess of such legal rate.

In *New York Central & Hudson River Railroad Co.* v. *York & Whitney Co.*, 41 S. C. R., 509 (256 U. S., 406), it is said in the second proposition of the syllabus:

"A consignee of interstate shipments who received the shipments and paid all charges claimed, which were less than the lawful rates established under the Interstate Commerce Act, as a matter of law assumed liability for the only lawful rate which it has a right to pay or the carrier a right to charge, and could not escape liability therefor through any contract with the carrier, and its liability was not a question of fact to be determined from circumstances tending to show an implied agreement."

See also *P., C., C. & St. L. Ry. Co.* v. *Fink*, 250 U. S., 577.

The evidence as to the agreement to pay the demurrage and penalties was admitted over objection, and was prejudicial to the plaintiff in error.

The only remaining question to be determined is the right to charge demurrage for a car held at Latonia, Kentucky, when the shipping instructions and bill of lading were to deliver at Cincinnati, Ohio.

In *Ulary* v. *Pa. Rd. Co.*, 58 Interstate Commerce Commission Reports, page 439, the bill of lading read that the freight was to be delivered at Town Point Wharf, in Maryland. On arrival of the ship-

ment at Philadelphia it was found that the Erics-son Line, a water carrier, could not operate to Town Point Wharf, for the reason that the canal was obstructed by ice. Arrival notices were mailed to complainant, care of Ericsson Line, and demur-rage was charged and paid. The court held that the complainant was entitled to reparation in the amount paid, with interest, stating at page 440:

"Where shipments are billed through from point of origin to destination and carriers have con-tracted to make delivery specified in the bill of lading the assessment of demurrage charges at a point intermediate to the delivery point is unau-thorized and unlawful."

And the court cites *C. S. Butterfield Co. v. N. O. & N. E. Rd.*, 55 I. C. C., 741, and decisions there cited.

The *Butterfield case* was in reference to a ship-ment from Tyler, Miss., to St. Louis, Mo. The legality of the assessment of demurrage was the point in issue. The car, which was a carload of lumber, was consigned to complainant at St. Louis, care M. P. Rd. Co. It appears that the freight reached East St. Louis, Illinois, and was delivered to the Terminal Railroad Association of St. Louis for delivery to the M. P. railroad. The Terminal railroad returned the car to the N. O. & N. E. Rd. Co., asking for the exact delivery point on the M. P., and stating that the loading was too wide to pass permanent structures on the railroad tracks. The car was held on defendant's tracks, and demurrage was assessed, which was paid. *Held:*

"The shipment was billed through from point of

origin to the Missouri Pacific tracks. The carriers to St. Louis contracted to make the delivery specified in the bill of lading, and the assessment of demurrage charges at a point intermediate to the delivery point was unauthorized and unlawful.''

In the case of *Elm City Lumber Co.* v. *Seaboard Air Line Ry. Co.*, 64 Interstate Commerce Commission Reports, page 660, a shipment was made from North Carolina to Petersburg, Va. The shipments were consigned to complainant at Petersburg, at which point it had no office. The bills of lading carried the notation: "A. C. L. Delivery," which meant Atlantic Coast Line. The shipments came over the Seaboard Air Line, and, on arrival at Petersburg, the Seaboard line did not turn over the shipments to the Coast line, but held the cars and sent notices to the complainants at Petersburg that the shipments were ready for delivery. Delivery was finally made from the tracks of the Seaboard line and demurrage collected. It was held:

"The rate applicable to the shipments included delivery on the tracks of the Coast Line at Petersburg. In similar cases we have condemned the assessment of demurrage charges on shipments withheld from the carrier named in bill of lading as the delivering line. We find that the demurrage charges assailed were unlawfully collected."

It would seem, therefore, that before demurrage can properly be charged, there must be delivery at destination, unless cars are to be reconsigned at some other point, when notice of arrival at point of reconsignment is sufficient to entitle the carrier to demurrage. Delivery at Latonia, Kentucky, was not delivery at Cincinnati, Ohio, and until delivery

was made in the latter city no demurrage or penalty could be charged.

The judgments of the Court of Common Pleas and Municipal Court will be reversed.

*Judgments reversed.*

Cushing and Hamilton, JJ., concur.