# CHARLESTON.

NORFOLK & WESTERN RAILWAY COMPANY *v.* WILLIAMSON GROCERY COMPANY

(No. 5921)

Submitted April 26, 1927. Decided May 3, 1927.

CARRIERS—*Receiver of Interstate Shipment on Uniform Bill of Lading, Freight Collect, is Liable For Charges, Regardless of Representation That Charges Were Prepaid (U. S. Comp. Stat. § 8565).*

One who receives from a carrier an interstate shipment on a uniform bill of lading, freight collect, assigned to and held

by him, becomes liable for the carrier's lawful charges, known or unknown, supposed to be paid or otherwise, and is not relieved from liability because of an erroneous representation by the carrier's employee that the charges have been prepaid.

(Carriers, 10 C. J. § 700.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by the Norfolk & Western Railway Company against the Williamson Grocery Company. Judgment of *nil capiat*, and plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Bronson & Straton,* and *Holt, Duncan & Holt,* for plaintiff in error.

*J. E. Wilkinson,* for defendant in error.

LIVELY, JUDGE:

Plaintiff Railway Company sued defendant Grocery Company for freight charges amounting to $110.83 on a car of cracked corn, from Chicago, Ill., to Williamson, W. Va., and upon a verdict for defendant, judgment of *nil capiat* was entered.

The Grocery Company purchased the corn through a merchandise broker from Wentworth Milling Company of Chicago, to be delivered at Williamson, freight prepaid. On October 5, 1923, the car arrived at Williamson, having been delivered to a connecting carrier at Chicago on September 27, 1923, by the Wentworth Milling Company, and consigned to order of Wentworth Milling Company at Williamson with instructions to notify the Grocery Company. Upon its arrival the Grocery Company was promptly notified. The bill of lading (uniform bill) with draft attached was sent to a bank at Williamson. The Grocery Company paid the draft, and the bill of lading, endorsed by the Milling Company, was delivered to it. It then presented and delivered the bill of lading to the Railway Company and the car was delivered to the Grocery Company for unloading at one o'clock P. M. October 6, 1923; and at noon on October 8th the car had been unloaded, and was surrendered. The bill of lading required that the freight should be collected from the person to whom the

shipment was delivered. But when the car was unloaded on October 8th, the Railway Company delivered the waybill which showed that the freight, $110.83, had been paid. An arrangement existed between the Railway and Grocery Company that the latter should pay its freight bills at least 48 hours after delivery of the goods. The Grocery Company sold the corn before any claim for freight was made and at a price based upon a prepayment of the freight, and if it has to pay the freight, then it would sustain a loss instead of making a profit on the corn. Afterwards, on January 15, 1924, the Grocery Company was notified that the freight had not been paid, and formal demand for payment was made on June 5, 1924. In the meantime, the Wentworth Milling Company, the shipper, had become bankrupt. Upon refusal of payment by the Grocery Company, this suit followed. At the conclusion of the evidence, the Railway Company offered a peremptory instruction to find for it, but the court refused to give it, and gave an instruction almost peremptory in character offered by defendant; and upon the coming in of a verdict for defendant, refused to set it aside. The errors relate to the introduction of evidence and refusal of evidence; and refusal to give the peremptory instruction for plaintiff; and the giving of the instruction for defendant.

As no special bills of exception were taken upon the introduction or refusal of evidence, and as the motion to set aside was not based on the introduction or refusal of evidence, that assignment or error cannot be considered. *State* v. *Henderson,* 103 W. Va. 361, decided this term.

The sole question is whether the verdict is contrary to the law and evidence. If contrary to the law and evidence, the instruction given for defendant is necessarily erroneous.

Defendant does not deny liability for the carrier's charge, at the time of the delivery of the corn to it at Williamson. Indeed, it is well settled that where the consignee, standing in the shoes of the owner, as in this case, accepts an interstate shipment, he is liable for the carrier's charges, for he knows that it is subject to a lien for the charges, and knows, or is charged with knowledge, of the lawful published tariff rates therein. *Pittsburgh C. & C. &c. Ry Co.* v. *Fink,* 250 U. S. 577, 63 L. Ed. 1151; Hutchinson on Carriers (3rd Ed.) Sec. 807.

The person to whom the goods are delivered, holding the bill of lading, is presumptively the owner, and becomes liable for the tariffs as soon as they are delivered to him. Hutchinson on Carriers (3rd Ed.) Sec. 177. The corn was shipped to the consignor at Williamson, with the notation on the bill of lading to notify defendant, and the original bill of lading to which a draft was attached for the price of the corn was delivered to defendant on October 6th upon payment of the attached draft, whereby defendant by endorsement of the shipper became the owner and liable for the freight. On the face of this bill there was the notation for collection of the freight. Defendant took the corn from the carrier with notice of the lawful tariff charges on it. But defendant seeks to escape this liability on the ground that the carrier is estopped from recovery because it misled defendant by delivering to it the waybill which erroneously showed the freight had been paid; in consequence of which defendant sold its corn for a less price than it otherwise would have done. The trial court held that this erroneous waybill so delivered estopped plaintiff from recovery; for the jury was instructed that if it believed from the evidence that at the time the corn was delivered plaintiff represented to defendant that the freight had been prepaid, by giving it a freight bill showing payment of the freight, and that before defendant knew that this was a mistake and the freight had not been paid, it sold the corn at a price from which it would suffer loss if now compelled to pay the freight charges, and that defendant at that time believed and had reason to believe that the freight bill had been paid, then the verdict should be for defendant.

The federal statute, Barnes' Fed. Code 1922 Sup., Sec. 7886, requires that the carrier shall collect the freight charges, and shall not directly, or indirectly, by any scheme or device, make any rebate or undercharge. It must treat all persons alike in its charges for service of transportation, who are similarly situated and who are served under like circumstances and conditions. So that if the carrier charges and receives only a part of the lawful tariff on a shipment, and the shipper or consignee pays the same in good faith relying upon the statement of the carrier that the payment is in full, neither the shipper, consignee nor carrier is bound by the settlement.

Many federal cases so hold. These decisions are based on the fact that the consignee or shipper of an interstate shipment knows that the property is subject to the carrier's lien, and is charged with knowledge of the lawful tariff rates, and knows that the carrier is prohibited from charging or receiving less than the lawful tariff rates. *Pittsburgh C. & C. &c. Ry. Co.* v. *Fink,* 250 U. S. 577 (supra); *Union Pacific R. R. Co.* v. *American Smelting Co.,* 121 C. C. A. 182; *New York &c. Ry. Co.* v. *York & W. Co.,* 215 Mass. 36; *Pa. Ry. Co.* v. *Titus,* 216 N. Y. 17, L. R. A. 1916 E. 1127; *Texas & P. R. Co.* v. *Mugg,* 202 U. S. 242. In such cases it does not make any difference that the goods have been disposed of before the claim for freight is made. No estoppel arises from that fact. In *N. Y. &c. Ry. Co.* v. *York & Whitney Co.,* 256 U. S. 406, 65 L. Ed. 1016, an interstate shipment of perishable goods had been received by defendant subject to lawful charges, upon straight bills of lading approved as to form by the Interstate Commerce Commission, which bills of lading had not come into the consignee's possession, and it had no knowledge of the terms thereof. The charges claimed by the carrier were paid, the goods sold by the consignee and the proceeds remitted to the shipper. Later the carrier discovered that it had not been paid its charges, and demanded payment; the defendant refused to pay, claiming it had accepted the goods upon the understanding that all proper charges had been paid. The court held that the liability of the consignee was a question of law; that the transaction amounted to an assumption on the part of the consignee to pay the lawful tariffs, and that it could not escape the liability imposed by law, through any understanding with the carrier. The fact that it had sold the goods and remitted to the shipper did not estop the carrier from asserting its claim. And in *Pittsburgh &c. Ry. Co.* v. *Fink,* 63 L. Ed. 1151 (supra), the interstate shipment was delivered to the consignee, the waybill specifying charges of $15.00, which he paid. About one year afterwards, and after defendant Fink had sold part of the shipment, it was discovered that the waybill did not state the true amount of charges, and defendant refused to pay any further sum. The case originated before a justice of the peace and was finally taken to the Supreme Court of the United States which held

that the consignee was liable for the full tariff charges under the equal rates requirement of the Interstate Commerce Act, and that the carrier was not estopped because it had collected under the waybill which did not reflect the true amount, and which it then stated to be the true amount. The court said that estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. See *L. & N. Ry. Co.* v. *Central Iron and Coal Co.*, 44 Sup. Ct. Rep. 441, cited in *Railway Co.* v. *Cross*, 96 W. Va. 666, 672. We can see little difference in collecting an undercharge, and not collecting any charge at all. Although innocently done, through error, the effect in both instances would be to violate the equal and uniform rate act of congress. To permit mistakes of the character here involved to exempt the shipper or consignee from payment of lawful charges, the amount of which they are presumed to know, would tend to open the door to abuses and devices which would result in rebates and favoritism to shippers. A carrier could easily make such "mistakes", and in that way accomplish favoritism, and avoid the statute.

Counsel for defendant in error relies upon *Davis, Director General of Railroads*, v. *Akron Feed & Milling Co.*, 296 Fed. 675. There the carrier, which had erroneously stated to the consignee that a part of the freight charges had been paid, was estopped from recovering payment of that part because of that representation. The shipment of wheat in that case had originated in Kansas, was shipped to another point in that state where it was milled, thence consigned under bill of lading to a flour dealer at Kansas City, and afterwards reconsigned to Mueller at Chicago, Ill., and by him reconsigned to defendant, Akron Feed & Milling Company, at Akron, Ohio. Mueller had sold the flour to defendant f. o. b. cars at Akron, for a certain sum and he forwarded the bill of lading with draft attached to a bank at Akron. The freight from Chicago to Akron was $64.38, and the carrier collected that amount, representing to the consignee that all freight to Chicago had been paid. Upon this representation the consignee acted, received the shipment and paid the freight from Chicago where it had made the purchase. The court denied

recovery because the consignee had no knowledge, nor equal means with the carrier of acquiring knowledge, that the freight from Kansas City to Chicago was not paid. The shipment had been re-consigned. The consignee had not accepted the goods, and could have protected itself against loss in making remittance had it been informed. The court held that the consignee was not charged with knowledge of the freight tariffs from Kansas City to Chicago. That case is quite different from the instant one. Defendant here was charged with knowledge of the amount of the tariff due, had paid for the goods, the bill of lading had been assigned to it, requiring payment of freight, and then unloaded the car and accepted the corn. In *Western & Atlantic R. Co.* v. *Underwood*, 281 Fed. 891, it was held that, "A consignee cannot accept delivery of an interstate shipment of goods without incurring liability for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the consignee's actual relation to the shipper is." And in the opinion it is said that, "No mistake as to the amount of the freight can be asserted, and no misrepresentations about that can deceive, for the consignee is bound to know what it is. He cannot rely on a statement that it has been prepaid, because the statute requires him 'to satisfy the lawful lien' before taking the goods, and not simply to pay what is demanded of him." See the recent case (1926) of *Chicago &c. Ry. Co.* v. *Central Warehouse Co.*, 14 Fed. Rep. (2nd Series), page 123, where the bill of lading erroneously stated prepayment of the freight.

It is argued that it would be inequitable to require defendant to pay inasmuch as the Wentworth Milling Company has become insolvent. It appears that the carrier made unsuccessful efforts to collect from the shipper. True, defendant's efforts in that regard might have been more successful. It might be conceded that the rule laid down by the various decisions and based on the object and purpose of the Interstate Commerce statute is harsh and inequitable in some instances. However, it seems to be well established that a consignee cannot accept an interstate shipment without becoming liable for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise, no matter what relation exists be-

tween the shipper and the consignee. There is no controversy of fact, and the question of liability is one for the court. The law is for plaintiff under the facts, and the peremptory instruction to find for it should have been given.

*Judgment reversed; verdict set aside; new trial awarded.*