[No. 34930. Department Two. April 30, 1959.]

L. A. HENDRICKS, *Respondent*, v. WILDER CONSTRUCTION CO.,
INC. *et al.*, *Appellants.*[1]

*Livesey, Kingsbury & Livesey* (*George Livesey, Jr.*, of counsel), for appellants.

*Williams & Morris* (*James M. Morris* and *Paul M. Williams*, of counsel), for respondent.

ROSELLINI, J.—This suit concerns the rental of certain dump trucks used in the performance of a state highway contract; and the principal issue in the trial court was whether the appellant was to pay the respondent, a common carrier, a dump-truck rental based upon a six-cubic-yard rate, or a seven-cubic-yard rate.

The appellant Wilder Construction Co., Inc., hereafter referred to as the appellant, is a corporation engaged in

[1]Reported in 338 P. (2d) 754.

the contracting business in the state of Washington. In the spring of 1956, it secured a contract from the state to construct a roadbed on state highway No. 1, in Skagit county.

In order to construct the roadbed, it was necessary for the appellant to haul to the job site a material known as "borrow," which was obtained from a pit located a short distance east of the site on secondary highway 1-H.

Double axle ("six wheeler") trucks traveling over secondary highway 1-H were subject to a weight limitation of 36,000 pounds including the weight of the truck. All of the trucks used on this job for hauling borrow were double-axle trucks subject to the 36,000-pound limitation.

Shortly after work began the respondent, who owned several double-axle dump trucks, contacted Gordon Hayes, treasurer of the appellant corporation, among whose duties was the contacting of truck owners for the purpose of renting trucks, and offered to rent his trucks to the appellant. The respondent was informed by Mr. Hayes that appellant had sufficient trucks but that if more trucks were needed, he would be contacted.

Several days later, Mr. Hayes, on behalf of the appellant, called the respondent and asked for either six- or seven-yard-capacity six wheel dump trucks with "ten hundred rubber." The only six-wheel dump trucks which respondent owned were eight-yard trucks. Because of their weight, no more than six yards of "borrow" could be hauled legally over secondary highway 1-H, and, according to the testimony of Mr. Hayes, it was agreed that only six-yard loads would be hauled. Respondent put his trucks to work about March 19, 1956.

Prior to this time, some trucks hired by the appellant had been hauling seven yards of borrow, while others had been hauling six. The appellant received notice that the state highway patrol proposed to weigh all trucks hauling on secondary highway 1-H, as it appeared that the trucks hauling seven yards were overweight. During the next few days, the appellant had all of the trucks weighed and,

as a result, decided to limit all loads to six yards. Thereafter, all trucks hauling borrow for the appellant along state highway 1-H hauled six-cubic yards and were paid at the six-cubic-yard rate. Two trucks left the job at this time because their owners did not want to furnish their trucks as six-yard trucks. The respondent was never paid a seven-yard rate except when his trucks were used on another road where the weight limit was higher.

For the hauls made over secondary highway 1-H, the respondent was paid on the basis of six-yard hauls. He cashed the checks which he received monthly, with vouchers attached showing the basis on which the amounts were calculated, and made no complaint until after the work was completed on August 3, 1956, although on July 17, he had written to the public service commission and asked whether a contractor could rent an eight-yard capacity truck and pay for only the number of yards actually hauled. In a reply to this letter, he was informed that if the rate schedule based on truck capacity was used, payment should be made according to such capacity.

Thereafter, he made demand upon the appellant for the difference between the amount paid him and the amount he would have been paid under the eight-cubic-yard rate. When this claim was rejected, this suit was instituted. The appellant resisted the suit on the ground that the respondent had agreed to furnish a six-cubic-yard truck and had accepted payment on that basis without complaint until the job was completed.

The trial court found that the appellant had ordered a seven-cubic-yard truck and gave judgment for the respondent accordingly. It is the contention of the appellant that this finding has no support in the evidence.

The law of the case is admitted to be that where the public service commission has established a rate based upon truck capacity, ordinarily the carrier may not charge more nor less than the rate established and applicable to the capacity of his truck, but that, where a truck of a certain capacity is ordered, and the carrier furnishes a larger

truck for his own convenience, the proper rate is that applicable to trucks of the capacity ordered. It is also not denied that the owner cannot waive his right to collect a higher rate where an improper rate has been charged. *Robinson v. Wolverton Auto Bus Co.*, 163 Wash. 160, 300 Pac. 533; *Pittsburgh, Cincinnati, Chicago, & St. Louis R. Co. v. Fink*, 250 U. S. 577, 63 L. Ed. 1151, 40 S. Ct. 27; *Gardner v. Rich Mfg. Co.*, 68 Cal. App. (2d) 725, 158 P. (2d) 23.

There was a conflict in the testimony of the respondent and that of Mr. Hayes, the appellant's agent who contracted for the rental of the trucks. The respondent averred that Mr. Hayes asked for "six wheel dump trucks with ten hundred rubber" and did not specify the capacity. Mr. Hayes testified that he asked for six- or seven-cubic-yard trucks and that, because of the weight limitation, it was agreed that the respondent's trucks would be used as six-yard trucks.

It was the theory of the respondent that regardless of any agreement, he was entitled to be paid on the basis of the maximum capacity of his trucks. He also contended that no agreement had been made. The theory of the appellant was that there was an agreement to furnish six-yard trucks, and that this agreement was proved beyond doubt by the fact that the respondent accepted payment on this basis without protest until after the work was finished.

It was within the province of the trial court to find that neither of these theories was entirely justified by the evidence nor correct under the law. There was evidence that the appellant knew that trucks of a capacity of at least seven yards had been furnished, and it had utilized them to this capacity on several occasions. The evidence of the appellant's agent was that a seven-yard truck had been requested. On the other hand, there was no testimony that the respondent advised the appellant or its agent that the only trucks he owned were eight-yard trucks, and the court was therefore justified in concluding that the agreement was to furnish seven-yard trucks, and the larger trucks

174

were furnished solely for the convenience of the respondent. Ordinarily, the acceptance of payment on the six-yard basis might constitute a waiver, but, as pointed out above, the right to collect the proper rate cannot be waived.

Since the findings are supported by substantial evidence, the objection is not well taken.

The judgment is affirmed.

WEAVER, C. J., MALLERY, FINLEY, and FOSTER, JJ., concur.

June 18, 1959. Petition for rehearing denied.