**PUERTO RICO MARINE MANAGEMENT, INC., Plaintiff,**

v.

**MOLAC IMPORTS, INC., Defendant.**

**Civ. No. 82–2484CC.**

United States District Court,
D. Puerto Rico.

Oct. 3, 1984.

---

Luis A. González-Pérez, San Juan, P.R., for plaintiff.

Eugene F. Hestres, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action for the collection of freight charges allegedly owed to plaintiff pursuant to the provisions of the Shipping and Intercoastal Shipping Acts, 46 U.S.C. Secs. 801, *et seq.* The case was tried before the Court and submitted upon stipulated facts, the oral testimony of Arturo Molini, Secretary Treasurer and General Manager of defendant corporation, documentary evidence and the parties' post-trial memoranda of law. Having considered the evidence presented, the Court makes the following

## FINDINGS OF FACT

Plaintiff Puerto Rico Marine Management, Inc. (PRMMI), a corporation organized in accordance with the laws of the State of Delaware, has an office at San Juan, Puerto Rico, and is engaged in the transportation of cargo by water between different states and the Commonwealth of Puerto Rico. Pursuant to the provisions of the Shipping and Intercoastal Shipping Acts, 46 U.S.C. Secs. 817 and 844, plaintiff had filed with the Federal Maritime Commission its joint intermodal tariff number 200A, effective as of November 30, 1980, which established a rate of $5.42 per 100 pounds of canned, bottled, packaged or preserved foodstuffs transported by PRMMI. For this rate to apply, a minimum trailer load of 44,000 pounds was required. Some time prior to May 12, 1981 defendant's agent in California made arrangements with plaintiff's agent in that state to transport 14,325 pounds of food produce from Los Angeles, California to San Juan, Puerto Rico at the rate of $5.42 per 100 pounds, without any requirement as to minimum weight or space. According to Mr. Molini's testimony, this special rate was offered by plaintiff because it had some refrigerator trailers which would otherwise be transported empty to Puerto Rico. On May 13,

1981 plaintiff issued a combined inland/ocean bill of lading number 601101246–4 for the transportation of foodstuffs in cans, cartons and sealed bags from Los Angeles to San Juan, the consignee being the defendant corporation. This bill of lading was marked *"SPECIAL RATE—DRY GOODS—Carriers Convenience"* and the total freight charges to be collected were $788.72. Upon their arrival in San Juan, Puerto Rico, defendant payed and plaintiff accepted and received the sum of $788.72 in payment of freight and handling charges. Upon receipt of this sum, plaintiff released and delivered the goods to the defendant without taking exception nor making any notation in the delivery documents as to any pending charges to be paid by defendant. The correct freight charges for the transportation of defendant's goods to Puerto Rico, according to plaintiff's tariff number 200A, would have been $2,384.80 plus wharfage ($12.32). On October 14, 1982 plaintiff filed the instant action to collect the difference between the correct charges and the charges actually paid by the defendant.

The relevant facts having been established, the Court hereby set forth the following:

## CONCLUSIONS OF LAW

Defendant contends that plaintiff is barred from prosecuting this action since Article 947 of the Commerce Code of Puerto Rico, 10 LPRA Section 1909, providing for a six-month period of limitation to file actions for the collection of freight charges, applies and the complaint was filed more than six months after the cause of action accrued. In the event that the Court should find that laches and not a limitations period, applies to this case, it contends that Article 947 is the analogous statute to be applied in considering whether there has been an inexcusable and prejudicial delay in filing this action, and submits that there has been. Defendant also claims that plaintiff is estopped from collecting the charges owed because it negotiated a rate for its own convenience and

accepted the sums paid by it in full payment of the freight charges owed.

Jurisdiction is correctly invoked under 28 U.S.C. Sections 1331 and 1337 since this action arises under an "Act of Congress regulating commerce," namely the Shipping and Intercoastal Shipping Acts, 46 U.S.C. Sections 801, *et seq.* See: *Maritime Service Corp. v. Sweet Brokerage de Puerto Rico,* 537 F.2d 560 (1st Cir.1976). Section 817, 46 U.S.C., provides that "/ e /very common carrier by water in interstate commerce shall establish, observe and enforce just and reasonable rates, fares, charges, classifications and tariffs ..." and that "/ e /very such carrier shall file with the Federal Maritime Commission and keep open to public inspection ... the maximum rates, fare and charges for or in connection with transportation between points...." This section further provides that "/ n /o such carrier shall demand, charge or collect a greater compensation for such transportation than the rates, fares and charges filed in compliance with this section, except with the approval of the Commission...." Section 815 of that title prohibits "any shipper, consignor, consignee, forwarder, broker, or other person, or any officer, agent, or employee thereof to knowingly and willfully, directly or indirectly, by means of false billing, false classification, false weighing, false report of weight, or by any other unjust or unfair device or means obtain or attempt to obtain transportation by water of property at less than the rates or charges which would otherwise be applicable." Sections 844 and 847, 46 U.S.C., impose similar obligations on carriers, shippers and consignees in intercoastal commerce by way of the Panama Canal.

Since these provisions, designed to eliminate discrimination and secure uniformity of charges in transportation by water were modeled after the Interstate Commerce Act, it has been held that they should be interpreted and applied in like manner. *Maritime Service Corp. v. Sweet Brokerage de P.R.,* 537 F.2d 560, 562 quoting from *United States v. Cunard S.S. Co.,* 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76

L.Ed. 408 (1932). Under the Interstate Commerce Act, as well as under the Shipping Acts, "the rate of the carrier duly filed is the only lawful charge" and "/ s /hippers and travelers are charged with notice of it." *Louisville and Nashville R.R., Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). "Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed." *Id.* Furthermore, the principle of estoppel is no defense against the right to collect the legal rate for it "/cannot/ become the means of successfully avoiding the requirements of the Act as to equal rates, in violation of the provisions of the statute." *Pittsburgh C.C. and St. L. Ry. Co. v. Fink*, 250 U.S. 577, 582–83, 40 S.Ct. 27, 28, 63 L.Ed. 1151 (1919). As stated in *Louisville and Nashville R.R. Co. v. Maxwell*, 237 U.S. at 97, 35 S.Ct. at 495:

> This rule is undeniably strict, and it obviously may work hardship in some cases as in the case of a consignee who payed all that was demanded when the freight was delivered, *Pittsburgh C.C. and St. L. Ry. Co. v. Fink*, 250 U.S. 582 [40 S.Ct. 28] but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

We, therefore, rule that plaintiff is not estopped from filing this action to recover the difference between the lawful charges and the charges actually imposed for the transportation of defendant's goods.

■ Contrary to defendant's position that this is a common action for collection of transportation charges, covered by Article 947 of the Commerce Code of Puerto Rico, this action arises under the Shipping and Intercoastal Shipping Acts and its purpose is to collect the lawful charges which should have been collected under the provisions of said acts. Neither the Shipping Act nor the Intercoastal Shipping Act contain a statute of limitations. Where Congress has not expressly provided for a limi-

tations period in which to file actions arising under federal law, the more suitable state statute of limitations is usually applied. See *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). This practice of "borrowing" state statutes of limitations, however, is not to be mechanically applied for "/ i /n some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law." *Id.*, at 2289. As stated in *Occidental Life Insurance Co. v. E.E.O.C.*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977), quoted in *Del Costello:* "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies."

■ The Shipping and Intercoastal Shipping Acts, just like the Interstate Commerce Act, embody a congressional policy against the charging and collection of discriminatory rates for transportation of goods and passengers by water in interstate commerce. Although Congress failed to mention any time limitations as to civil actions filed under the Shipping and Intercoastal Shipping Acts,[1] it expressly provided a two-year period for filing a complaint thereunder before the Federal Maritime Commission. 46 U.S.C. Section 821(a). On the other hand, a three-year limitations period for all actions at law filed by carriers to recover their charges or any part thereof, was included in the Interstate Commerce Act. We think that these two dispositions, the two-year period for filing a complaint before the Federal Maritime Commission and the three-year period for filing a civil action for the recovery of charges under the Interstate Commerce Act are necessary for the implementation of the congressional policy against discriminatory rates and these, not the shorter period established in the local statute, should be looked upon in determining the

---

1. The civil action under the Shipping and Intercoastal Shipping Acts is one implied from the statutory scheme. *Maritime Service Corp. v.*

*Sweet Brokerage de Puerto Rico,* 537 F.2d 560 (1st Cir.1976).

timeliness of a civil action filed under the Shipping and Intercoastal Shipping Acts. To rule that this action, but not one filed with the Federal Maritime Commission, is barred by a six-month period of limitations would be incongruent. If Congress deemed two years the adequate period within which to file complaints before the Federal Maritime Commission, we must allow at least as much for the filing of a civil action before a federal court.[2] The instant action, filed only a year and five months after its cause accrued is not barred by the more analogous statutes of limitations.

Accordingly, plaintiff is entitled to recover from defendant the difference between the lawful charges owed and the amount actually paid by defendant upon delivery of his merchandise and it is hereby ORDERED that defendant Molac Imports, Inc. pay unto plaintiff the sum of $1,608.40 corresponding to such difference, plus costs.

SO ORDERED AND ADJUDGED.

---

**2.** The Shipping Act has recently been amended and the two-year period has been extended to three years. The new Shipping Act, however, does not apply to the instant action which was filed prior to its enactment. See Pub.L. 98–237, Mar. 20, 1984, 98 Stat. 80, Sec. 11, 46 U.S.C. Sec. 1710(g).