MONTPELIER & WELLS RIVER R. R. *v.* CALDBECK-COSGROVE
CORPORATION.

May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed October 3, 1939.

*H. C. Shurtleff* for the plaintiff.

*Porter, Witters & Longmoore* for the defendant.

MOULTON, C. J.   This cause was tried below upon an agreed statement of facts, and judgment was rendered for the defendant, to which the plaintiff excepted.

The defendant was the consignee of a shipment of metal roofing, ordered by it from the Sheet Metal Manufacturing Company of Youngstown, Ohio, hereinafter referred to as the consignor. The consignor prepared the bill of lading, by which the shipment was routed via the Baltimore and Ohio Railroad to Toledo, Ohio; Pere Marquette Railroad to Detroit, Michigan; Canadian Pacific Railway to Wells River, Vermont; and Montpelier and Wells River Railroad (the plaintiff) to destination at Barre, Vermont; with stopover privilege at St. Johnsbury, Vermont, for partial unloading.   The shipment moved over this route and was duly delivered to the defendant, who paid to the plaintiff the charges according to the rate given in the bill of lading.   This rate was stated to be 42 cents per one hundred pounds, but the legal rate

covering the specified route was 66.5 cents. There was a competing route between Youngstown and St. Johnsbury and Barre via the New York Central Railroad over which the rate was 42 cents, but the agent of the Baltimore and Ohio, who accepted the shipment for carriage, did not call the attention of the consignor to this fact. The Baltimore and Ohio did not participate in the cheaper route, and there was no route by which it had a line haul wherein the rate was less than 66.5 cents. The bill of lading contained the uniform condition: ''The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery.''

The question is whether, upon the facts, the plaintiff is entitled to recover from the defendant the difference between the 42 cent rate and the 66.5 cent rate, which amounts to $156.63.

■■ ''The Interstate Commerce Act requires the carrier to collect, and the party legally responsible therefor to pay, the lawful rate existing at the time of shipment, without deviation through mistake, ignorance or otherwise, * * * and the party liable for such charges is conclusively presumed to know the lawful rate.'' *Montpelier & Wells River R. R.* v. *Bianchi & Sons,* 95 Vt. 81, 83, 84, and cas. cit. No contract of the carrier can reduce the amount legally payable, nor can any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor. *Louisville & Nashville R. R. Co.* v. *Central Iron & Coal Co.,* 265 U. S. 59, 65, 44 Sup. Ct. 441, 442, 68 L. ed. 900.

■■ It has been ruled by the Interstate Commerce Commission that where a shipper prepares his own bill of lading, with specific instructions as to the route over which the shipment is to be moved, and inserts therein a rate which is inapplicable to that route, it is the duty of the agent of the carrier to whom the shipment is delivered to call attention to the conflict between rate and route and obtain from the shipper full and definite instructions; and that, if this duty is not performed, the carrier is required to protect the rate in effect over the cheapest route affording it a line haul. *St. Louis Cooperage Co.* v. *Baltimore & Ohio R. R. Co.,* 161 I. C. C. 258, 260; *Washington Building Lime Co.* v. *Baltimore & Ohio R. R. Co.,* 173 I. C. C. 370, 371;

*American Cast Iron Pipe Co.* v. *Louisville & Nashville R. R. Co.,* 185 I. C. C. 222; *Tilghman Lumber Corp.* v. *Atlantic Coast Line R. R. Co.,* 200 I. C. C. 353, 354. This rule, however, does not require an initial carrier to deliver the shipment to a competitor at the point of origin, even though that competitor participates in a cheaper rate to the destination of a particular shipment, as the originating carrier is entitled to a line haul. *St. Louis Cooperage Co.* v. *Baltimore & Ohio R. R. Co., supra,* 259; *Metamora Elevator Co.* v. *C., H. & D. Ry. Co.,* 160 I. C. C. 491, 492; *McLean Lumber Company* v. *Louisville & Nashville R. R. Co.,* 22 I. C. C. 349, 342.

■ In the present case it appears that the route specified in the bill of lading was not alone the cheapest but the only route that afforded the initial carrier a line haul—that is, participation in the transportation of the shipment from Youngstown to St. Johnsbury and Barre. *Cummings Sand & Gravel Co.* v. *M. & St. L. Ry. Co.,* 182 Iowa, 955, 166 N. W. 354, 356, L. R. A. 1918C, 797. The failure of the agent of the initial carrier to inform the consignor that a cheaper rate could be elsewhere obtained cannot, under these circumstances, prevent the exaction of the lawful and established rate for the route taken. *Wheeling & L. E. Ry. Co.* v. *Standard Envelope Mfg. Co.,* 2 Fed. Supp. 637.

*Judgment reversed and judgment for the plaintiff to recover the sum of $156.63, with interest from the date of delivery to the defendant, August 3, 1933, and costs.*