SOUTHERN PACIFIC COMPANY V. SOUTHERN RICE SALES COMPANY.

No. 8797. Decided February 23, 1944.
Rehearing overruled March 22, 1944.
(178 S. W., 2d Series, 264.)

*John P. Bullington, Cyril J. Smith,* and *Baker, Botts, Andrews & Wharton,* all of Houston, for petitioner.

The Court of Civil Appeals while correctly holding that the proper rate applicable to the shipment was the 26 cent rate, erred in holding that the shipment had been misrouted; and also while holding that it was plaintiff's duty to notify defendants that the 26 cent rate was not applicable erred in holding that its failure to so notify defendant caused it any damage for which plaintiff was liable. Texas & Pac. Ry. Co. v. Mugg, 202 U. S. 242; Travis v. Artic Roofing, Inc., 27 Atl. (2d) 78; Empire Oil & Refining Co. v. Atchison, T. S. F. Ry. Co., 205 I. C. C. 239.

*Harry R. Jones* and *Andrews, Kelley, Kurth & Campbell,* all of Houston, for respondent.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

The petitioner, Southern Pacific Company, doing business as Southern Pacific Steamship Lines, a common carrier, by this suit seeks to collect from respondent, Southern Rice Sales Company, for undercharges on shipments of 147 carloads of clean rice moving from Houston, Texas, to various North Atlantic ports. Respondent paid petitioner for such shipments on the basis of 26 cents per hundred pounds, which rate was quoted by

petitioner to respondent and inserted in the bills of lading. Both the petitioner and the respondent thought at that time that the 26-cent rate was applicable. Later, however, the Interstate Commerce Commission and the United States Maritime Commission both held that this rate was not applicable. Port of Beaumont, Texas, et al v. Agwilines, Inc., 243, I. C. C. 679; Port of Beaumont, Texas, v. Agwilines, Inc., Docket No. 576, 1941 A. M. C. 425. After such holdings it became petitioner's duty to demand and sue for the undercharges, and that is why this suit was filed. If the petitioner is entitled to recover in this action, the amount of such recovery is stipulated to be $4,973.67, plus interest.

The trial court rendered judgment for respondent on two grounds: First, that the 26-cent rate was applicable, and, second, that, if it was in error as to the applicable rate, nevertheless petitioner had misrouted the shipments thereby damaging respondent in an amount equivalent to the full amount of the undercharges for which damages petitioner was liable. The Court of Civil Appeals disagreed with the first holding of the trial court, but agreed with its second holding and upon that ground affirmed its judgment. 174 S. W. (2d) 1018.

The petitioner has assigned two principal points of error, the first being directed to the holding of the Court of Civil Appeals that there was a misrouting of the shipments, and the second to its holding that petitioner's failure to notify respondent that the 26-cent rate was not applicable caused respondent to suffer damages for which petitioner is liable.

There is no dispute as to the facts. Each shipment originated at mills or warehouses located in the City of Houston and moved over terminal tracks for distances varying from 8 1/2 to 16 miles to the docks of petitioner at the turning basin of the Houston Ship Channel in Houston. From these docks the shipments moved via petitioner's ships to various North Atlantic ports. Each shipment was interstate and therefore the tariffs then on file with the Interstate Commerce Commission reflected the applicable rates. On all the shipments transit privileges were waived and the rate of 26 cents was inserted in the bills of lading. Transportation charges were paid on the basis of that rate and this suit is for the additional charges claimed by petitioner to be due on the claimed applicable rate of 33 cents.

The tariffs in question contain three specified rates. The third of such rates is the one about which we are concerned. It is the 26-cent rate and was made subject to the following re-

strictions: "Applicable only as proportional rate on traffic on which no transit privileges are accorded, moving via rail lines to Galveston or Houston, Texas, from points in Louisiana and Texas." At the time this rate was promulgated there was in effect a joint through rail and water rate of 42 cents per hundred pounds applicable to rice transported from interior points in Texas and Louisiana to petitioner's docks in Houston and Galveston. In connection with that rate shippers were accorded a transit privilege, which permitted movement of rice to respondent's mills or warehouses in Houston for unloading, storing and processing, and later, within a year, reshipment of an equivalent quantity upon the basis of the 42 cent rate plus transit charge of 2-3/4 cents per hundred pounds, or a total of 44-3/4th cents per hundred pounds. This total charge was divided between the railroads and the steamship lines. Respondent had been shipping upon this joint rate for years and could have moved all of the tonnage involved in this suit under it had it chosen to originate the shipments outside of Houston and to claim transit privileges.

■ As noted, respondent's contention that the 26-cent rate was applicable to the shipments in question was sustained by the trial court, but was not sustained by the Court of Civil Appeals. Respondent renews the contention here and seeks to uphold the judgment upon that ground. It is argued that by the use of the language in the restriction that it was applicable only to traffic "moving by rail to * * * Houston, Texas, from points in Louisiana and Texas," the City of Houston was not intended, but rather the docks of petitioner at the Port of Houston. Thus construed shipments, like the instant one, originated in the City of Houston and moving to such docks would be held to move to Houston from points in Texas. This contention was rejected by the Court of Civil Appeals, by the Interstate Commerce Commission and by the United States Maritime Commission, cited supra, and was also rejected by the Circuit Court of Appeals, 5th Circuit, in its opinion released on December 1st, 1943, in Cause No. 10732, styled Standard Rice Company, Inc., v. Southern Pacific Company, 139 Fed. (2d) 93, involving similar shipments of rice under facts and issues almost identical with those presented here. It cannot be said that the argument of respondent on this question is wholly lacking in plausibility, but we agree with the authorities cited above that the language is unambiguous, and that it should not be construed to cover traffic moving from Houston. "To Houston" and "from Houston" are not synonymous expressions. We agree with the conclusion expressed in the opinion in the case last cited that: "This 26-cent rate only applied where shipments originated outside of Hous-

ton," and that by Houston is meant the City of Houston and not the docks maintained by petitioner therein.

■■ Nor do we think that the judgment may be affirmed on the ground that there was a misrouting by petitioner of the shipments resulting in damages to respondent for which petitioner is liable. Respondent relies upon the well established rule that if a carrier misquotes a rate and there is a conflict between the rate and the routing as specified in the bill of lading, it is the duty of the carrier to call the shipper's attention to the conflict and afford him an opportunity to choose between rate and route, and if the carrier fails to perform this duty, it is chargeable with misrouting and must give the shipper the lowest rate in effect over its lines from origin to destination. This rule cannot be made to apply to the shipments under review. There was no misrouting. The rice moved over the route selected by respondent. There were not two available routes over one of which the 26-cent rate was applicable; that rate was not applicable at all. Petitioner is seeking in this suit to collect only the lowest applicable rate. It misquoted the rate, but there is a very marked distinction between misquoting and misrouting. There can be no misrouting when there are not two routes available. These shipments originated in Houston and respondent cannot now obtain relief on the theory that, had petitioner not misquoted the rates, it would have originated the shipments elsewhere. A misquotation of rates often results in damage to the shipper, but it is a damage for which the carrier is not liable. The carrier is presumed to know, and is charged with the duty of quoting the lawful rate existing at the time of the shipment, but the shipper is also conclusively presumed to know the lawful rate and cannot be heard to say that he relied upon the rate quoted by the carrier and was damaged on account of such reliance. Were the rule otherwise, it would result in discrimination, the very evil which the law was designed to prevent. Louisville & Nashville Railroad Co. v. Maxwell, 237 U. S. 94, 59 L. Ed. 853, 35 Sup. Ct. 494, L. R. A. 1915E, 665; Pettibone v. Richardson, 126 Fed. (2d) 969; Montpelier & Wells River Road v. Caldbeck-Cosgrove Corp., 110 Vt. 390, 8 Atl. (2d) 681.

We agree with this conclusion of the Circuit Court of Appeals in the case of Standard Rice Co. Inc. v. Southern Pacific Co., supra.

"The shipments in question originated within the corporate limits of Houston and no rail line haul was made or used as contemplated by the tariff. Moreover, the defendant cannot origi-

nate its shipments at Houston and later obtain relief on the theory that it would have originated them elsewhere had it known, or had the plaintiff told it, that the 26 cent rate was not the legal rate on shipments originating in Houston. Defendant could take nothing by being advised that the wrong rate had been quoted. The fact remains that the shipments did originate in Houston and of necessity if rice was to be moved later it could only be moved by the legal rate from that point. Therefore, the legal rate for shipments originating there must be paid. * * *"

It is ordered that the judgments of both courts below be reversed and that judgment be here rendered in favor of petitioner for the stipulated amount above set out.

Opinion adopted by the Supreme Court Feb. 23, 1944.

Rehearing overruled March 22, 1944.