# TENNESSEE CENT. RY. CO. v. CUMBERLAND STORAGE & WAREHOUSE CO., Inc.—260 S. W. (2d) 208.

Middle Section. February 27, 1953.

On Petition for Rehearing March 27, 1953.

Petition for Certiorari denied by Supreme Court, July 17, 1953.

Waller, Davis & Lansden, of Nashville, for appellant.

C. Vernon Hines, of Nashville, for appellee, Cline & Bernheim.

James C. Havron, of Nashville, for appellee, Cumberland Storage & Warehouse Co.

FELTS, J.   This suit was brought by complainant carrier to recover demurrage charges in the sum of $787.-95 alleged to be due from defendant warehouse company on some 59 cars of scrap iron consigned and delivered to defendant and handled for its account, pursuant to an "average demurrage agreement" by which it promised to pay such demurrage charges to complainant.

Defendant filed an answer denying liability and a cross bill bringing in as new parties defendant Cline & Bernheim, who shipped the cars of scrap metal to defendant and for whom it unloaded the same from the cars and loaded it on a barge.   Defendant averred that if it should be held liable for these charges it would have a right to a judgment over for them against Cline & Bernheim.   In their answer they denied that they were liable for such charges.

The Chancellor found that defendant had refused to accept the cars of scrap metal and was therefore not liable for demurrage charges thereon.   He entered a decree dismissing the bill and the cross bill, providing that dismissal of the cross bill should not prejudice any rights that complainant might have against the shipper, Cline & Bernheim, as a result of defendant's refusal to accept the shipment.

Complainant brought the cause here by broad appeal and has assigned errors through which it insists that the Chancellor erred in finding that defendant refused to accept the cars; that the undisputed proof shows that it

did receive and unload all them; and that therefore it became liable to complainant for the demurrage charges sued for.

Complainant operates a railroad line in Tennessee and Kentucky. Defendant is engaged in the storage and warehouse business in Nashville, its warehouse being on the bank of the Cumberland River; and it has a spur track running from its warehouse to complainant's track. It acts as agent for shippers by rail and river, receiving and unloading shipments consigned to it and often reloading them for reshipment to other points.

Though it acts as agent for shippers, defendant acts for itself as principal in its dealings with complainant. In March, 1946, defendant and complainant entered into an average demurrage agreement, which is still in force, under which defendant promised to comply with all the published I. C. C. tariffs and "to make prompt payment of all demurrage charges accruing thereunder in accordance with the average basis, as therein established or as hereafter lawfully modified by duly published tariffs."

By the tariffs it was provided that when complainant, for any cause beyond its control, could not deliver a car to defendant-consignee at its place notice would be given it by complainant that delivery would be made at the nearest available point to the consignee. Under the average demurrage agreement defendant was given a credit for early release of a car and charged a debit for over-time use of a car. At the end of each month the credits were offset against the debits and if there was an excess of debits complainant billed defendant for demurrage charges on such excess.

Cline & Bernheim were dealers in scrap iron with a place of business in Nashville, several miles from defendant's warehouse. There was a spur track leading from

Cline & Bernheim's place of business to complainant's track, and they would ship scrap iron by rail to defendant's warehouse and thence by river barge to steel mills outside the State of Tennessee. The cars of scrap iron would be consigned to defendant or to "Location 165," defendant's warehouse; and defendant would receive and unload the cars and reload the scrap iron on a barge for Cline & Bernheim.

In June, 1950, Cline & Bernheim shipped a number of cars of scrap iron consigned to defendant at its warehouse to be transferred by defendant to a barge for reshipment. No barge had then arrived. An employee of complainant advised Mr. Minton, an officer of defendant, that the cars were ready to be delivered and asked what complainant should do with them. Mr. Minton said, "I don't know, I don't want them, we have no place to put them, we don't want the scrap."

The Chancellor treated this conversation as a rejection of the cars. We do not think it can be so treated. The parties themselves did not so treat it. Instead of rejecting the cars, Mr. Minton called Mr. Cline of Cline & Bernheim, for instructions. He asked Mr. Cline why the cars had been loaded, and stated there was no barge and defendant had no place to put the cars. In reply Mr. Cline "said to forget it, the barge would probably be available shortly and the matter was just let drop at that."

Complainant, being unable, for cause beyond its control, to deliver the cars at the consignee's place, gave defendant written notice, in accordance with the applicable tariff provisions, that it was making constructive delivery of the cars to defendant at then nearest available point. After some delay a barge arrived, and defendant notified complainant to place the cars at defendant's warehouse.

This was done and defendant received all the cars, unloaded them, and reloaded the scrap iron on the barge for Cline & Bernheim.

During the delay pending the arrival of the barge and the receipt and release of the cars, complainant entered on demurrage sheets debits for each day each car was kept over time and credits for other cars which were consigned by other shippers to defendant and which were released by it before expiration of the "free time" allowed for unloading cars. This was in accordance with the tariffs and with the average demurrage agreement of the parties. As we understand, there is no question as to the method of figuring the demurrage or as to the amount of it.

■ Demurrage charges on railroad cars are part of the transportation charges and are covered by the I. C. C. tariffs and the Interstate Commerce Act, 49 U. S. C. A. Sec. 1 et seq.; and they must be collected by the carrier from the shipper or consignee to the same extent as freight charges. Davis v. Timmonsville Oil Co., 4 Cir., 285 F. 470; Iversen v. U. S., D. C., 63 F. Supp. 1001, 1005, and cases there cited; 9 Am. Jur., Carriers, Secs. 599-615.

■■ The consignor is ordinarily liable for transportation charges. He requires the carrier to perform the service when he delivers the goods for transportation, and thereby obligates himself to pay the charges for such transportation. The usual stipulation in a bill of lading that the consignee shall pay such charges is not a contract by the carrier to look to the consignee, but it may deliver the freight and still hold the consignor for the charges. New York C. R. Co. v. Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160; Cleveland, C., C. & St. L. Ry. Co. v. Southern Coal & Coke Co., 147 Tenn. 433, 444-445, 248 S. W. 297, 299; Nashville, Chattanooga & St.

L. R. Co. v. Commercial Nursery Co., 8 Tenn. App. 16, 20-21; Annotation, 24 A. L. R. 1163; cf. New York Cent. R. Co. v. Trans-American Petroleum Corp., 7 Cir., 108 F. (2d) 994, 129 A. L. R. 206.

■ But the consignee may become liable for the charges. When he accepts the goods and the benefits rendered, the law implies a contract upon his part to pay the charges unless it appears to the knowledge of the carrier that he received the goods not as owner but as agent for another. New York C. R. Co. v. Ross Lumber Co., supra; Cleveland C., C. & St. L. R. Co., v. Southern Coal & Coke Co., supra; Nashville, Chattanooga & St. L. Ry. Co. v. Commercial Nursery Co., supra; Pennsylvania R. Co. v. Lord & Spencer, Inc., 295 Mass. 179, 3 N. E. (2d) 231, 105 A. L. R. 1211; Annotation, 105 A. L. R. 1216; 9 Am. Jur., Carriers, Sec. 624.

■ It is undisputed that the demurrage charges sued for accrued on the cars of scrap iron which Cline & Bernheim shipped and consigned to defendant, and that such charges were made pursuant to the applicable tariffs and the amount of them was correct. It is likewise undisputed that defendant-consignee accepted delivery and received and unloaded all of the cars; and that all of them were handled for its acount under its average demurrage agreement by which it contracted as principal and promised to pay complainant all the tariff charges. So we conclude that defendant is liable to complainant for the amount of such charges.

But as to cross-defendant, Cline & Bernheim, defendant stood in relation of agent. As such agent, it acted upon the instructions of Mr. Cline, waited until a barge became available, and then received the cars, unloaded them, and reloaded the scrap iron on the barge for the rest of its interstate journey. In performance of this service for

them defendant became liable to complainant for the demurrage charges, and it has a right for its reimbursement to look to its principal, Cline & Bernheim, who accepted its service and the benefits of the transportation for which these charges are a part.

The decree of the Chancellor is reversed and a decree will be entered here awarding complainant a recovery against defendant for the amount of the demurrage charges, $787.95, and the costs, and awarding defendant a recovery over against cross-defendant, Cline & Bernheim, for the amount of such charges and the costs.

Howell and Hickerson, JJ., concur.

### On Petition to Rehear

FELTS, J. ■ Cline & Bernheim have filed a petition for rehearing on so much of our decree as rendered judgment over in favor of Cumberland Storage & Warehouse Company, Inc., against Cline & Bernheim. Petitioners insist that complainant's broad appeal did not bring up the cause as to them, they were not before this Court, and no decree could be entered against them.

The effect of complainant's broad appeal was to transfer to this Court the entire cause as to all the parties, for a hearing here de novo and the re-examination of the whole matter of law and fact appearing in the record. Code sec. 9036. In hearing that cause this Court sat as a court of equity to try the cause as though it originated in this Court, and it was our duty to render such decree as should have been rendered by the Chancellor. Code sec. 9051; Gibson's Suits in Chancery (4th Ed.), secs. 1262, 1263a, 1313.

The proof showed that the warehouse company was liable to the railway under the bill, and was entitled to a

judgment over under its cross-bill against Cline & Bernheim for its reimbursement. The Chancellor should have entered such a decree. Hearing the cause as a court of chancery de novo and upon a re-examination of the whole matter of law and fact appearing, it was our duty to render such decree as the Chancellor should have rendered, and as we did enter, without remanding the cause.

The petition to rehear is denied at the cost of petitioners.

Howell and Hickerson, JJ., concur.