**LYON VAN LINES, INC., Appellant,**

v.

**Harold OGDEN et al., Appellees.**

No. 16227.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 20, 1973.

Rehearing Denied Jan. 17, 1974.

Ross, Banks, May, Cron & Cavin, Daniel J. Goldberg, Houston, for appellant.

Kenneth J. Vitucci, Houston, for appellees.

PEDEN, Justice.

Lyon Van Lines, a common carrier, sued Mr. Harold Ogden and wife for charges of $2,308.46 for transporting household goods owned by the Ogdens from Warren, Michigan, to Houston. The trial court rendered a take nothing judgment against Lyon after a non-jury trial.

Mr. Ogden testified that he was a vice president of Precision Lazer, Inc., located in Michigan. His company moved him to Houston. Arrangements were made by Precision Lazer's purchasing agent with Farr Moving Company, Lyon's local agent in Detroit, to move the Ogden's furniture. Mr. Ogden made no contact with anyone from Lyon regarding the arrangements for transporting the goods. An estimator from Lyon contacted Mrs. Ogden at the request of Precision Lazer to determine the charges to be made. She later acknowledged receipt of the furniture in good condition on the bill of lading and inventory forms supplied by Lyon. The bill of lading designated the Ogdens as shipper at their Michigan address and as consignee at their Texas address. It was stamped "Billed" and bore the notation "charge to Precision Lazer, Inc." It shows the charges and was admitted in evidence without objection.

Answers to interrogatories given by Mr. Ogden and admitted into evidence stated that Lyon Van Lines, Inc. picked up his household furniture in Michigan and delivered it to Houston. Mr. Ogden testified Precision Lazer issued its purchase order for payment of these charges, and he relied solely on this order for payment. He denied telling anyone from Lazer or Farr that he would accept personal responsibility for the charges and to his knowledge neither did his wife.

The only testimony as to the tariff was given by the president of Farr Moving Co. when he introduced in evidence his company's invoices. He then stated that the moving charges are computed by a combination of weight and mileage plus packing service. That soon after the weight tickets are made up, someone in the office with actual knowledge of the transaction gets them and the orders showing the service done "and then he uses a tariff book to complete the charges." The invoices were then admitted without objection. They show the weight as 15,340 pounds, the rate as $11.82 and the amount as $1,813.19.

Lyon promptly billed Precision Lazer, but it filed for bankruptcy some five months later without having paid Lyon's bill. Lyon then billed the Ogdens.

The trial court concluded that Lyon was entitled to recover neither the damages sued for nor its attorney's fee.

The trial court made findings of fact that 1) plaintiff is a common carrier, transporting goods for others for hire, 2) plaintiff delivered defendants' household goods from Michigan to their residence in Houston, 3) the shipment had been ordered by Mr. Ogden's employer, Precision Lazer, 4) which company had contracted with plaintiff to pay for the shipment and that plaintiff would look to it for payment, 5) after Precision Lazer became bankrupt, plaintiff sought payment from defendants, 6) who made no agreement with plaintiff to pay for the shipment, 7) plaintiff presented no evidence of having published

a tariff schedule of its rates nor approval of them by the Interstate Commerce Commission, 8) plaintiff offered no evidence that the freight charges for the shipment were authorized by the tariff schedules and 9) plaintiff was and is a private corporation whose agents rendered the services for which suit has been brought.

■ In support of Lyon's first point of error, that the trial court failed to apply Federal law to the facts of this case, it relies on Section 323 of Title 49, U.S.C., and cases decided under it, to fix liability for the transportation charges against the Ogdens.

We sustain this point of error.

■ The general rule is that if a consignee accepts a shipment he becomes liable as a matter of law for the full amount of freight charges. Louisville & Nashville Railway Co. v. United States, 267 U.S. 395, 45 S.Ct. 233, 69 L.Ed. 678 (1925); Missouri Pacific Railroad Co. v. Phelan Co., 444 S.W.2d 832 (Tex.Civ.App.1969, writ dism.). See also authorities collected under note 13, 49 U.S.C.A., Sec. 3(2).

■ The Interstate Commerce Act provides that no railroad (49 U.S.C.A., sec. 3(2)) or motor carrier (49 U.S.C.A., sec. 323) may deliver any freight until all tariff rates and charges thereon have been paid. This Act imposes upon the consignee who accepts the shipment the liability for the payment of freight and other charges without regard to any contract, and even though the consignee may have relied on a promise made by a third party to pay for all such charges. 13 Am.Jur.2d 944, Carriers, sec. 473.

The facts in National Van Lines, Inc. v. Herbert, 81 S.D. 633, 140 N.W.2d 36 (1966), decided by the Supreme Court of South Dakota, are strikingly similar to those before us. The court fixed liability for transportation charges against the defendants in that case, stating at pages 37 and 38:

"The Interstate Commerce Act provides that no carrier by railroad and no express company subject to the Act shall deliver or relinquish possession at destination of any freight or express shipment transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination. 49 U. S.C.A. § 3(2). This congressional policy of preventing unjust discrimination in rates has given rise to the general rule that the consignee of property transported in interstate commerce by acceptance of delivery makes himself liable for the transportation charges. Pittsburgh C. C. and St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; N. Y. Cent. & H. R. R. Co. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900. . .

"Concerning this rule it is written in Western & Atlantic R. Co. v. Underwood, 5th Cir., 281 F. 891, 'That the consignee cannot accept delivery without incurring liability for the carrier's charges, known or unknown, supposed to be prepaid or otherwise, and no matter what the actual relation to the shipper is, appears a harsh rule but is seemingly established by authority.' Obviously, it honors congressional policy rather than consideration of equity."

■ The Ogdens contend that Lyon is precluded from relying on 49 U.S.C., sec. 323 because it failed to specifically plead and prove the federal statutes relied on as a basis of recovery. They point out that Lyon pleaded an express contract as the basis of recovery, presented only evidence to prove a contract and that only at the time of oral agrument to the trial court did Lyon raise the issue of federal law. Although the record supports appellees' allegation that Lyon failed to plead and prove

the federal law relied on, the trial court was required to take judicial notice of the federal statute.

"The Texas courts must take judicial notice of the laws of the United States. . . ." 1 McCormick & Ray, Texas Law of Evidence 184, sec. 172 (2nd Ed. 1956).

In Fuller v. Minter, 215 S.W.2d 207 (Tex.Civ.App., 1948, no writ), the appellant contended the contents of federal statutes may not be judicially noticed without proof of some character of their provisions. This court, speaking through the late Justice Monteith, stated:

"It is the uniform rule in this state that courts of the state, trial and appellate, shall take judicial notice of the acts of Congress. Mims v. Swartz, 37 Tex. 13; Missouri, K. & T. R. Co. of Texas v. Wise, 101 Tex. 459, 109 S.W. 112; First National Bank v. First State Bank of Jacksonville, Tex.Com. of App., 291 S.W. 206."

See also 2 McDonald, Texas Civil Practice 27, Sec. 5.09.3 (1971 rev.).

■ Although a pleading does not invoke the law that is deemed to be applicable to the case made, the court will notice and apply the proper rule. Indeed, an averment of the law applicable to the case is usually objectionable as stating what is only the pleader's conclusion. 45 Tex.Jur. 2d 403, Pleadings, sec. 24.

■ Under appellant's second point of error it argues that the trial court's findings of fact 7 and 8 are immaterial. Those findings were that there was no evidence that Lyon had published a tariff schedule of its rates, had obtained I.C.C. approval of them or had based its charges for the shipment in question on those rates. We also sustain this point.

It is stated at page 943 of 13 Am.Jur.2d, Carriers, sec. 473:

"A consignee may become liable for freight charges by virtue of either an express or an implied agreement to that effect, but ordinarily he is not otherwise liable. The mere designation in the bill of lading of the consignee as the one liable for the freight charges does not create a contractual relation between the carrier and the consignee, rendering the latter liable therefor, but rather the consignee becomes liable therefor when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered, and the benefits conferred by the carrier for such charges. The acceptance of the goods shipped ordinarily imports an obligation on the part of the consignee to pay the freight charges, particularly where the bill of lading specifies that the charges are to be paid by the consignee."

The court held in Tenn. Cent. Ry. Co. v. Cumberland Storage & Warehouse Co., 36 Tenn.App. 684, 260 S.W.2d 208 (1953) that under the Interstate Commerce Act the consignee may become liable for the transportation charges which the consignor has obligated himself to pay. When the consignee accepts the goods and the benefits rendered the law *implies a contract* on his part to pay the charges, unless it appears to the knowledge of the carrier that he received the goods not as owner but as agent for another. (emphasis added)

In an oft-cited opinion, New York Central Railroad Co. v. Warren Ross Lumber Co., 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160 (1922), it was held that a consignee who accepted an interstate shipment as owner "thereby entered into the contract expressed in the bill of lading to pay the charges and became liable to pay such charges. . ." Pennsylvania R. Co. v. Mathias Lumber Co., 113 Ind.App. 133, 47 N.E.2d 158 (1943); Berry v. Best Motor Lines, 209 S.W.2d 430 (Tex.Civ.App.1948, no writ).

The consignees being the presumptive owners, if they accepted the freight in the capacity of owners, the law implied a promise on their part to pay the charges, although the bill of lading did not come into their possession and they had no knowledge of its terms. Pittsburgh, C. C. & St. Louis Railway Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); see also note, 105 A.L.R. 1214.

 The carrier is presumed to know, and is charged with the duty of quoting the material rate existing at the time of the shipment, but the shipper is also conclusively presumed to know the lawful rate. Southern Pacific Co. v. Southern Rice Sales Co., 142 Tex. 264, 178 S.W.2d 264 (1944).

We hold that the trial court properly denied some of the relief sought by the plaintiff.

The bill of lading lists transportation charges in amount of $1,813.19. It further lists charges for 1) extra pick up and delivery; 2) appliance services; 3) additional transportation charges; and 4) packing, totalling $495.27. These latter charges are incidental to transporting household furnishings.

"Although a common carrier, in the absence of tariff schedules providing therefor, is under no legal obligation to charge for services accessorial or incidental to its transportation services, it is generally recognized that, at common law, a carrier is entitled to extra compensation for such services rendered pursuant to agreement or request, but not when such services have not been requested or agreed upon." 13 Am.Jur.2d 934, Carriers, sec. 467.

 We find no evidence that the Ogdens requested or agreed to the performance of these services.

Nor do we find any basis for recovery of an attorney's fee by the plaintiff.

We reverse and render the trial court's judgment that Lyon take nothing and award Lyon its $1,813.19 transportation charges. We otherwise affirm the trial court's judgment.