LIBERTY ENTERPRISES,
INC, Appellant,

v.

MOORE TRANSPORTATION COMPA-
NY, INC., and Fort Worth Pipe
Company, Appellees.

No. 2–83–141–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 15, 1984.

Rohde, Chapman, Ford & How, Lawrence M. Wells, Dallas, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, Perry J. Cockerell, Fort Worth, for Moore Transportation Co.

Baker, Miller, Mills & Murray, Bill Kuhn, Dallas, for Fort Worth Pipe Co.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Liberty Enterprises, Inc. ("Liberty"), a Kansas corporation, was sued by appellee, Moore Transportation Company, Inc. ("Moore") for freight charges on shipments of oilfield tubular goods which Liberty had purchased from appellee Fort Worth Pipe Company ("Fort Worth Pipe"). In a nonjury trial, Moore recovered judgment against Liberty for stipulated freight charges, prejudgment interest, and attorney's fees. Liberty took nothing on an indemnity claim against Fort Worth Pipe. Liberty complains the court erred in asserting jurisdiction over them; ruling its claim against Fort Worth Pipe was barred by the statute of frauds, the parol evidence rule and the doctrine of laches; finding that there was a contract between Liberty and Moore; and awarding attorney's fees to Moore.

We affirm in part and reverse in part and remand.

In its first point of error Liberty complains that the court erred in granting Moore's motion to deem Liberty's conduct as a general appearance, thus asserting

personal jurisdiction over Liberty in violation of article 2031b TEX.REV.CIV.STAT. ANN. (the Texas "Long Arm-Jurisdiction Statute") and the Fourteenth Amendment to the Constitution of the United States. A discussion of the sequence of events is necessary.

On September 30, 1981 Moore sued Liberty for freight charges in the 17th District Court of Tarrant County. Liberty was served through the Secretary of State of Texas pursuant to TEX.REV.CIV.STAT. ANN. art. 2031b, sec. 4 (Vernon Supp. 1984), but filed no answer. Moore secured a default judgment on November 16, 1981. Liberty filed on December 9, 1981, its Special Appearance and, subject to same, its Original Answer. Later that same day, Liberty filed a Motion to Set Aside Default Judgment and to Grant a New Trial.

A new trial was granted, by agreed order, to Liberty on December 22, 1981. On February 25, 1982, Moore filed a "Motion to Vacate Agreed Order Granting New Trial And Reinstating Default Judgment Or In The Alternative to Deem Defendant's Conduct As A General Appearance." Upon hearing the motion, the court sustained the alternative plea. On April 12, 1982 the court ordered "that as a matter of law, Defendant has made a general appearance and that a further hearing in the Defendant's Special Appearance is unnecessary and will not be allowed."

On June 4, 1982 Liberty received leave to file its Original Third-Party Action against Fort Worth Pipe seeking indemnity for the freight charges and other damages engendered by Fort Worth Pipe's failure to pay such charges. Moore and Fort Worth Pipe sought summary judgments against Liberty.

At final hearing on June 6, 1983, the parties stipulated the amount of freight charges and pre-judgment interest. The court heard evidence on attorney's fees and rendered judgment against Liberty for $7,866.88 freight charges, $1,244.04 pre-judgment interest, and $3,530.00 in attorney's fees. The balance of the hearing was directed to the question of Fort Worth Pipe's liability to Liberty, resulting in a final judgment that Liberty take nothing from Fort Worth Pipe by way of indemnity.

 The threshold question requires us to determine if the trial court erred in deeming Liberty's conduct as a general appearance, without holding a hearing to allow Liberty to present its contest to the jurisdiction. A party who claims not to be amenable to process issued by the courts of this state may enter a special appearance objecting to the jurisdiction of the court over its person or property as provided by TEX.R.CIV.P. 120a.

Liberty's entrance in this cause came only after Moore had obtained a default judgment against it. Thereafter an agreed new trial was granted to Liberty. Moore contended and the trial court found that Liberty's agreement to the new trial order constituted a general appearance which served as a bar to its continued objection to the jurisdiction. Moore argues that any appearance *after judgment* is not covered by rule 120a, with the necessary implication that there can be no special appearance after judgment.

Liberty contends that a party does not enter a general appearance when it files a motion for new trial and has a hearing thereon, so long as such motion for new trial is filed subject to the special appearance, citing *Stegall and Stegall v. Cohn*, 592 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1979, no writ); *Pardue v. Confederate Air Force*, 615 S.W.2d 233 (Tex.Civ.App.—Dallas 1980, writ dism'd); and *Long v. Gonzales*, 650 S.W.2d 173 (Tex.App.—San Antonio 1983, no writ).

Rule 120a(1) states that:

A special appearance may be made *as to an entire proceeding* or as to any severable claim involved therein. Such special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion; provided however, that *a motion to transfer venue and any other plea, pleading, or motion may be contained in the same instrument or*

*filed subsequent thereto without waiver of such special appearance.*

TEX.R.CIV.P. 120a(1) (emphasis added). Subpart (2) of rule 120a states that, "[a]ny motion to challenge the jurisdiction provided for herein shall be heard and determined *before* a motion to transfer venue or any other *plea* or *pleading* may be heard." The rule clearly requires the court to proceed to hear the plea to jurisdiction before it may make any other orders in the case, especially before it hears a "motion" to deem an appearance as a waiver of a "special appearance". Subpart (3) of rule 120a states that:

> If the objection to jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose. Any such special appearance or such general appearance *shall not be deemed a waiver of the objection to jurisdiction when the objecting party or subject matter is not amenable to process issued by the courts of this State.* [Emphasis added.]

█ It is well settled law of this state that a motion for new trial or to set aside or vacate a default judgment does not act as a general appearance so as to foreclose the subsequent consideration of a plea of privilege. "Neither does such a motion serve as a waiver of a plea of privilege." *Pardue* 615 S.W.2d at 234. *See Donald v. Agricultural Livestock Finance Corporation,* 495 S.W.2d 592 (Tex.Civ.App.—Fort Worth 1973, no writ); and *Yell v. Prock,* 238 S.W.2d 238 (Tex.Civ.App.—Fort Worth 1951, writ dism'd). The question to be decided is whether a motion to set aside a default judgment which does not act as a general appearance for the purpose of a plea of privilege would so act for the purpose of a challenge to the jurisdiction. This rule in reference to the plea of privilege has been held applicable even where the plea of privilege is filed subsequent to the motion to set aside. *Pardue,* 615 S.W.2d at 234.

In the present case, all of appellant's pleadings and motions were filed subsequent and subject to its special appearance. The appellant complied with the requirements of rule 120a. The general commentary to rule 120a states that the rule "will permit the nonresident defendant to litigate the question of jurisdiction before judgment is rendered against him, rather than following the dangerous practice of allowing a default judgment to be rendered against him and then defend a suit on that judgment." From this, it can be seen that the inequity to be prevented by rule 120a was the forcing of a nonresident defendant to defend against a judgment which had been rendered without jurisdiction.

The court in *Walton v. Stinson,* 140 S.W.2d 497, 499 (Tex.Civ.App.—Dallas 1940, writ ref'd.), stated the rule that;

> If a judgment is void it must be from one or more of the following causes: (1) Want of jurisdiction over the subject matter; (2) want of jurisdiction over the parties to the action, or some of them; (3) want of power to grant the relief contained in the judgment. In pronouncing judgments of the first and second class, the court acts without jurisdiction, while in those of the third class it acts in excess of jurisdiction.

The Supreme Court of Texas has stated that a judgment is void if the court rendering such judgment "did not have jurisdiction, *both of the parties and of the subject matter* of the litigation." *Martin v. Sheppard,* 145 Tex. 639, 201 S.W.2d 810, 812 (1947) (emphasis added). The court in *Maxwell v. Campbell,* 282 S.W.2d 957 (Tex.Civ. App.—Waco 1955, writ ref'd), stated that "in so far as a *void* judgment purports to be the pronouncement of a court, it is not only invalid but is an absolute nullity and is in contemplation of law, no judgment at all." The Supreme Court of Texas in *Bridgman v. Moore,* 143 Tex. 250, 183 S.W.2d 705, 707 (1944), recognized that the rendering court "has not only the power but the *duty to vacate the inadvertent entry of a void judgment at any time,* either during the term or after the term, with or without a motion therefor." (Emphasis added.) *See Consolidated Underwriters v. McCauley,* 320 S.W.2d 60 (Tex. Civ.App.—Beaumont 1959, writ ref'd n.r.

e.), *cert. denied*, 361 U.S. 14, 80 S.Ct. 109, 4 L.Ed.2d 52 (1959).

If, in the present case, the appellant was not amenable to process issued by a court of this state, then the court below acted without jurisdiction and the default judgment was void. Therefore, the court would have the duty to set aside such judgment. It is an assumption of an indefensible position to say that a court of this state can gain personal jurisdiction over a party by rendering a void judgment. This flies in the face of the intended purpose behind rule 120a.

The court below, after careful consideration, decided that the appellant had entered a general appearance by making a motion to set aside the default judgment, requesting a new trial, and agreed to an order granting a new trial. However, the motion was filed subsequent and subject to appellant's special appearance. The Supreme Court of Texas has held that "a general appearance is entered whenever the defendant invokes the judgment of the court in any way on any question *other than that of the court's jurisdiction*, without being compelled to do so by previous rulings of the court sustaining the jurisdiction." *St. Louis and S.F.R. Co. v. Hale*, 109 Tex. 251, 206 S.W. 75 (1918) (emphasis added). *See Investors Diversified Services, Inc. v. Bruner*, 366 S.W.2d 810, 815 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.). In the present case, an "agreed order" was entered on the appellant's motion for new trial. If the appellant invoked the judgment of the trial court it was only to gain a hearing to test the jurisdiction which by the rule stated above does not constitute a general appearance. *See Curry v. Dell Publishing Company*, 438 S.W.2d 887 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.), wherein the court held that the filing of a petition for removal to federal court did not constitute a general appearance and that the requirements of rule 120a had been complied with when on remand to the state court a special appearance was filed. *Also see Stout-Jennings-Schmidt Company v. Schmidt*, 615 S.W.2d 267 (Tex.Civ.App.—Dallas 1981, writ

dism'd), where following a default judgment, numerous defendants filed special appearances under rule 120a and, subject thereto, their motion to set aside judgment, motion for new trial and original answer. The trial court entered an order setting aside the default judgment from which order an appeal was taken, the Court of Appeals dismissing for want of jurisdiction.

To hold as the appellee contends would be to completely deny a defaulting party the right to challenge the jurisdiction of the court after judgment except through a collateral attack. This would have the effect of deeming a default as a general appearance by a party, leaving that party no recourse but to invoke the court's jurisdiction before it could challenge that jurisdiction.

We hold that rule 120a permits invoking the question of jurisdiction by a "special appearance", at any stage of the "entire proceeding" (including that period of time after judgment when the trial court has power to act on the judgment). We find no distinction should be made between a "plea of privilege" whether before or after judgment and a plea to the jurisdiction at either time. A court may vacate, modify, correct or reform a judgment at any time before the expiration of 30 days, TEX.R.CIV.P. 329b(d), and in fact has a *duty* to vacate the entry of a void judgment at any time. *Bridgman*, 183 S.W.2d at 707. Any motion, plea or special appearance may be taken up during this time. The agreed order granting a new trial does not invoke the jurisdiction of the court, but does provide the opportunity to test the issue of the court's jurisdiction. We find no compelling reason to hold that the clear words of either rule 120a or 329b mean something else, by their silence, in expressly failing to mention post-judgment special appearance to contest jurisdiction. To hold that you must invoke jurisdiction to challenge the jurisdiction of the court, is to compel compliance with the infamous "catch 22" which rule 120a was intended to prevent.

■ We find the trial court committed error in deeming Liberty's conduct a general appearance after it agreed to an order granting a new trial. This error deprived Liberty of the right to test this issue, and thus requires reversal in part of the judgment and remand of the cause. Although we must reverse and remand, there are other points of error raised that in the interest of justice must be decided. TEX. R.CIV.P. 434.

Liberty asserts as its point of error two that the trial court erred in finding that its claim for indemnity against Fort Worth Pipe was barred by the statute of frauds, the parol evidence rule, and the equitable principle of laches. The evidence showed Liberty engages in oil and gas drilling and production with its principal place of business in Plainville, Kansas. It has not maintained a place of business nor had employees or agents within this state to do business on its behalf. During the approximate eighteen months prior to the purchase which generated this suit, Liberty had bought, on some forty occasions, oil field pipe and tubular goods from Fort Worth Pipe. In each instance, the goods were delivered to Liberty at its yard or to other drilling locations in Kansas by Fort Worth Pipe or its carrier at no expense to Liberty in accord with the general agreement between the parties. However, the invoices of such transactions in the early part of such course of dealing have the notation "FOB YARD" and shipped via "YOUR HIRE" or "YOUR HAUL" or "YOUR TRK" and then in the latter part of 1979, the invoice notations indicated such shipments were via Fort Worth Pipe's own trucks and still showing FOB YARD or FOB Plainville, Kansas.

In April of 1980, at a time when there was uncertainty about future supply and prices, Liberty purchased a quantity of goods from Fort Worth Pipe for future delivery when available. When the pipe was ready for shipment, Liberty was unable to receive it in its yard and, by agreement, the pipe was held at Fort Worth Pipe's yard at Conroe, Texas.

Fort Worth Pipe submitted five invoices covering the goods ordered in April, such invoices being dated May 9, May 19, May 30, May 26, and July 21, 1980. All such invoices bore notations "Holding Conroe Yd" and "FOB Conroe." When the invoices were received, Liberty's President, Roger L. Comeau, was surprised to see the FOB Conroe entry. He then called Fort Worth Pipe sales representative, Mr. Patrick, to point out that they did not want to be obligated to pick up the pipe at Conroe. Patrick, however, told him not to worry about it. After such conversation, Comeau was again surprised when the shipments arrived in October 1980 with bills of lading from Moore charging Liberty for the freight. Another telephone call to Patrick resulted in Patrick's assurance that he would "take care of it." On October 20, 1980, Liberty returned the freight bills to Moore with a note to the effect that the bills should be sent to Fort Worth Pipe. Mr. Patrick of Fort Worth Pipe told Mr. Moore when he inquired about payment, "It's not going to come from this office but it will be taken care of." The record is silent regarding further negotiations or demands until Moore brought suit against Liberty. It is undisputed that there existed a contract for sale between Liberty and Fort Worth Pipe Company as evidenced by the five written invoices submitted to Liberty. It is only the provisions of the contract regarding manner of shipment which Liberty sought to alter or explain by its evidence of an oral agreement different from the written invoices and its objection to the delivery terms shown on the invoices.

The invoices in question bear the notations "FOB Conroe." Conroe, Texas is the location of Fort Worth Pipe's yard. Under TEX.BUS. & COM.CODE ANN. sec. 2.319 (Vernon 1968), the term FOB means Free On Board. As used here, the term "FOB Conroe" indicates a *shipment contract* in which Fort Worth Pipe is only required to bear the expense and risk of placing the goods in the possession of a carrier, and must give the buyer prompt notice of the shipment and supply the buyer with docu-

ments necessary to obtain possession of the goods. On the other hand, if the term had been FOB place of destination, as contended by Liberty, there would have been a *destination contract* in which case Fort Worth Pipe would have borne the risk and expense of transporting the goods to Liberty's Kansas yard. TEX.BUS. & COM. CODE ANN. sec. 2.319, 2.503, 2.504 (Vernon 1968).

It is provided in TEX.BUS. & COM. CODE ANN. sec. 2.201 (Vernon 1968) that:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(b) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless *written notice of objection to its contents* is given within ten days after it is received. [Emphasis added.]

Liberty did not object in writing to the term "FOB Conroe" but contends that evidence of "course of dealing" and "usage of trade" should be considered to explain the terms of the agreement.

■ The provisions of TEX.BUS. & COM.CODE ANN. secs. 1.205, 2.202 (Vernon 1968) make Liberty's contention untenable. They provide that course of dealing and usage of trade may give particular meaning to and supplement or qualify terms of an agreement, but must be consistent with express terms of the agreement and where there is inconsistency, the express terms control. The express terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement and may only be *explained* or *supplemented* by course of dealing or usage of trade.

■ This court has recently considered the application of the parol evidence rule to evidence of custom and usage in *Corso v. Carr*, 634 S.W.2d 804, 809 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). We held that if the admission of custom and usage by parol testimony added something to the written contract, that effectively created a new contract, then such testimony was a clear violation of the parol evidence rule. In view of the foregoing, we hold that Liberty failed to properly object in writing to the terms of the contract with Fort Worth Pipe as set out in the invoices. The evidence of custom and usage or course of dealing may not be used to contradict the express terms of the unambiguous invoices nor may parol evidence be used to vary or alter the contract. *See Texas Illinois Co. v. Gant*, 251 S.W. 575, 577 (Tex.Civ.App.— Amarillo 1923, no writ); and 58 Tex.Jur.2d 42. We find that the trial court did not err in holding that Liberty's claim was barred by the statute of frauds and the parol evidence rule. There is no need to discuss whether the claim was also barred by laches. Appellant's point of error two is overruled.

■ Liberty in points of error three and four, challenges the trial court's findings as a matter of law that: (1) the purchase price of the subject goods was based upon an agreement that Liberty was to pay the cost of transportation; and (2) Fort Worth Pipe did not agree to pay the transportation charges and did not breach its contractual obligation. Liberty contends these findings are against the greater weight and preponderance of the evidence. In addition to the unambiguous terms of the written contract between Liberty and Fort Worth Pipe as to the obligation to bear transportation expense, we note that the record contains other extrinsic evidence that Liberty was obligated to pay transportation costs.

Mr. A.R. Smith, materials manager of Fort Worth Pipe, testified that at the time in question, as a result of price rises, customers who declined to pay for freight were charged an additional increment of .1562 cents per foot on 2⅜ inch pipe and .3433 cents per foot on 4½ inch pipe beyond the price charged on Liberty's invoices. After considering the evidence discussed above, we overrule points of error three and four.

In its fifth and sixth points of error, Liberty complains of certain of the trial court's findings of facts and conclusions of law regarding its liability to Moore for the payment of transportation charges and the award of attorney's fees to Moore. Moore's petition alleged its cause of action arose out of its transfer, shipment, and delivery of the merchandise which was accepted and used by Liberty, thus binding Liberty to pay the stated prices for transportation. The obligation imposed by law upon a consignee which accepts a shipment from a carrier is the subject of a searching and well-reasoned opinion written in *Lyon Van Lines, Inc. v. Ogden*, 503 S.W.2d 632 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ).

In *Lyon*, it was held that under federal law and the law of this state, the consignees of a shipment of household goods, upon their acceptance of the goods, became liable for transportation charges, even though the consignees' employer, and not the consignee, had contracted with the carrier to transport the goods. The following language found at page 943 of 13 Am.Jur.2d *Carriers* sec. 473 (1964) was quoted:

A consignee may become liable for freight charges by virtue of either an express or an implied agreement to that effect, but ordinarily he is not otherwise liable. The mere designation in the bill of lading of the consignee as the one liable for the freight charges does not create a contractual relation between the carrier and the consignee, rendering the latter liable therefor, but rather the consignee becomes liable therefor when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered, and the benefits conferred by the carrier for such charges. The acceptance of the goods shipped ordinarily imports an obligation on the part of the consignee to pay the freight charges, particularly where the bill of lading specifies that the charges are to be paid by the consignee.

*Lyon*, 503 S.W.2d at 636. The record in *Lyon* is silent regarding pleading or proof of attorney's fees, which were disallowed in that case. However, in a later case, a carrier recovered attorney's fees under the provisions of TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984) dealing with services rendered and labor performed. *See Barcheers v. Braswell*, 548 S.W.2d 76 (Tex.Civ.App.—El Paso 1977, no writ).

■ In the instant case, even though the transportation contract was initially entered into between Fort Worth Pipe and Moore, the consignee, Liberty, accepted the goods shipped, the services rendered by Moore, and the benefits conferred by Moore. We hold, therefore, that Liberty became liable for the payment of the transportation charges when it accepted the goods. Liberty's points of error three and four are overruled.

■ Having resolved the liability issue, we must now decide whether the trial court properly awarded attorney's fees to Moore. The court awarded such fees pursuant to TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984). Article 2226 provides in pertinent part:

Any person, corporation, partnership or other legal entity having a valid claim against a person or corporation for services rendered, labor done ... may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.

In the instant case, we have already determined that Moore had a valid claim against Liberty for the transportation services rendered by Moore. Therefore, under article 2226, Moore is entitled to attorney's fees incurred in pursuing that claim. Points of error five and six are overruled.

Because we have sustained point of error one, we must reverse and remand the case to the trial court, for determination of the issue of that court's jurisdiction over the appellant. Where, as here, the trial proceeded otherwise to an errorless judgment, to reverse the entire judgment would not be in the interest of justice, and would cause an unjust, inefficient utilization of judicial process and resources. This court lacks authority to determine factual issues, yet in this case, all that is required is for the trial court to hear the issue of challenge to its jurisdiction, which it in error cut-off by concluding it had jurisdiction as a matter of law as it held the appellant had waived, by agreed order for new trial, its objection to the jurisdiction. The dilemma created by this occurrence appears to be one of first impression in Texas.

The authority for this court to reverse and remand the cause in this case is TEX. R.CIV.P. 434, which provides in part:

> Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, ... and if it appear to the court that *the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties*, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, ... [Emphasis added.]

 This court having found error in the judgment of the trial court is authorized in a proper case to remand in the interest of justice, and has discretion in the matter. *Scott v. Liebman*, 404 S.W.2d 288 (Tex.1966); *Wilson v. Wilson*, 494 S.W.2d 609 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ dism'd); *Durr v. Newman*, 537

S.W.2d 323 (Tex.Civ.App.—El Paso 1976, writ ref'd. n.r.e.).

In discussing the "proper case" and what may be remanded, the Supreme Court has noted: "We believe the cases are rare and very exceptional in which this court *is warranted in limiting the issues of fact*, in reversing and remanding a case where the trial has been by jury." *Cole v. Estell*, 6 S.W. 175 (Tex.1887) (emphasis added).

 The case on appeal was not from a trial by jury, but a judicial determination of the case requires the trial court to hear evidence on its jurisdiction. *City of Houston v. Rodehever*, 615 S.W.2d 837 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). We believe this case is a rare and exceptional one. We find no cases on point. Those we find have been appeals from court rulings on pleas of privilege before trial on the merits, or on rulings from motions for summary judgments, or appeals from injunctions or requests for mandamus. We have found no case where the issue was failure of the trial court to properly hear a challenge to its jurisdiction, and thereafter the matter proceeding to an errorless trial.

We hold that the error affected only a part of the matter in controversy, that is the insufficiently developed question of the trial court's jurisdiction over appellant. We hold that issue is clearly separable without unfairness to the parties. Accordingly, the judgment of the trial court in the matter of its jurisdiction over the appellant is reversed. The remainder of the judgment is affirmed. The cause is remanded to the trial court and a new trial ordered only upon the question of the court's jurisdiction over appellant. Cost of this appeal are taxed against appellant.

FENDER, C.J., and ASHWORTH, J., concur.

FENDER, Chief Justice (concurring in part and dissenting in part).

On original submission the undersigned prepared and circulated an opinion affirming the instant cause in its entirety. This

opinion is prepared and submitted only to dissent from that portion of the now majority opinion which reverses the trial court below on the disposition of the jurisdictional question.

I agree with the majority's recitation of the chain of events that sets the stage for this decision and will not repeat same here. I also agree that the threshold question requires us to determine if the trial court erred in deeming Liberty's conduct as a general appearance without an opportunity to have a hearing and to present its contest to the jurisdiction.

Basic authority permitting a party who claims not to be amenable to process issued by the courts of this state to enter a special appearance objecting to the jurisdiction of the court over its person or property is provided by TEX.R.CIV.P. 120a. The rule prescribes the requisites of such special appearance and contemplates that the matter be heard and determined before a motion to transfer venue or any other plea or pleading may be heard. If the objection to the jurisdiction is overruled, the objecting party may thereafter appear generally for any purpose without waiver of objection to the jurisdiction.

As noted in the factual summary, Liberty's entrance in this cause came only after Moore had obtained a default judgment against it, thus necessitating the filing and disposition of its motion for new trial in order to preserve the jurisdiction of the trial court to hear its objection to the jurisdiction. After a new trial was granted to Liberty, it was the contention of Moore and the decision of the trial court that Liberty's conduct to such point constituted a general appearance which served as a bar to its continued objection to the jurisdiction. Such conclusion evidently was reached in view of the limitation of section 1, Rule 120a, with the necessary implication that there can be no special appearance after judgment.

Liberty contends that a party does not enter a general appearance when it files a motion for new trial and has a hearing thereon, so long as such motion for new trial is filed subject to the special appearance, citing *Stegall and Stegall v. Cohn,* 592 S.W.2d 427 (Tex.Civ.App.—Fort Worth 1979, no writ); *Pardue v. Confederate Air Force,* 615 S.W.2d 233 (Tex.Civ.App.—Dallas 1980, writ dism'd); and *Long v. Gonzales,* 650 S.W.2d 173 (Tex.App.—San Antonio 1983, no writ).

I view *Stegall* as holding, among other things not material to this inquiry, only that the filing of other pleadings along with the special appearance motion but subject to same, does not constitute entering a general appearance *Stegall* can be distinguished from this case by the fact that no judgment had been entered prior to the special appearance motion in that case.

In *Pardue, supra,* after an interlocutory default judgment against them, the defendants filed motions for new trial and pleas of privilege. After granting a new trial, the court sustained the pleas of privilege. On appeal, the sole claim was that the pleading and hearing on the motions for new trial constituted pleading and hearing on the merits of the case preceding the hearing on the pleas of privilege and thus the pleas of privilege were urged too late. The appellate court disagreed, saying that such a motion for new trial to set aside or vacate a default judgment does not have the effect of a general appearance so as to foreclose the subsequent consideration of a plea of privilege. Regarding the consequences of successful motions for new trial upon the question of jurisdiction, however, I am struck by the following expressions of the *Pardue* court which seem to be of little comfort to appellant Liberty in this case:

McDonald supports the proposition that a defendant may urge a motion to set aside a default judgment without waiving a subsequent hearing on a plea of privilege, reasoning that such motion does not invoke action by the trial court on the merits of the case. 1 R. McDonald, Texas Civil Practice sec. 4.40(111) (rev. 1965). Here, it was imperative that defendants set aside the interlocutory default judgment in order to present any defense to the suit. The posture of this case, at the

moment the interlocutory default judgment was set aside, was that *the defendants were before the court by reason of their appearance and the court had jurisdiction of both the persons and the subject matter.* The only pleadings before the court then remaining were the pleas of privilege which were next heard and acted upon. (Emphasis added).

. . . . .

Appellants further argue that the jurisdiction of the court was invoked at the hearing resulting in the order granting a new trial. We agree. Jurisdiction must attach, by service or otherwise, before the court has power to act; however, after jurisdiction attaches, a defendant is granted time within which to assert his defenses, whatever they may be.

I take "defenses" in the last line above quoted to mean defenses to the merits, which includes the assertion of the right to be sued in the court in which venue properly lies, but does not include a challenge to the jurisdiction of the very court which granted the new trial.

Likewise, as I see *Long v. Gonzales*, it is authority only for the proposition that granting of a motion for new trial setting aside a default judgment does not waive or preclude subsequent filing of a plea of privilege. While there is language in the three cases cited by Moore stating that general jurisdiction is not invoked in such situations and that the only jurisdiction invoked is that required to set aside the judgment and afford an opportunity to present the plea of privilege, they do not hold that in such cases there is still afforded an opportunity to present a plea to the jurisdiction after having invoked the jurisdiction of the court to set aside the default judgment.

While not necessary to the disposition of this cause, I note that in Liberty's motion for a new trial, it is asserted that Liberty had a meritorious defense to the claim of Moore and sets forth in affidavit form the details of such defense, and further that in such motion, Liberty states that it "is ready to try this case when it is promptly set for trial." I am not directed to any case, nor does independent research disclose any case, which has considered the precise question presented here, i.e., the effect of invoking jurisdiction to set aside a judgment upon a party's plea to dismiss the suit for lack of jurisdiction over the party. After careful review, I would hold that in this case the invoking of the jurisdiction of the trial court to set aside the default judgment was a general appearance and foreclosed a subsequent hearing on a plea to the jurisdiction, and would affirm the judgment below in its entirety.

ASHWORTH, Justice (concurring in part and dissenting in part).

I agree with the majority opinion that Liberty did not make a general appearance and that the case must be remanded for a hearing on its special appearance. However, the opinion should stop at that point. We should not now attempt to address the remaining points of error. In doing so, the majority in effect have rendered an advisory opinion. The case should be put back in the posture which existed when the question of jurisdiction over Liberty needed to be decided.

A decision by the trial court, after hearing, that it has jurisdiction over Liberty, will require a new trial on the merits. This will result in a duplication of effort on the part of the trial court, attorneys and parties. However, the status of this case requires a new trial in the event the trial court finds it has jurisdiction. There is no way now to determine what effect the trial court's finding of jurisdiction had on the prior trial on the merits.

I would reverse and remand to the trial court for a hearing on the special appearance and for such further procedures as would be consistent with the trial court's ruling on jurisdiction.